## John E. Turton and Wm. A. Quynn, Exc'rs of Richard W. Turton, *vs.* Mary Jane Turton.

A wife, who with her husband resided in Maryland, being entitled to a distributive share of an estate in Louisiana, executed to her husband a power of attorney to collect the same, by virtue of which he appointed two persons in New Orleans as agents to receive the money, to whom a portion of the proceeds of the personal estate was paid over *before* the death of the husband, and was transmitted to Maryland by a draft drawn *after* his death and received by his executors. Held:

That the receipt of this money by these agents, whether they be regarded as the agents of the husband or of the wife, was equivalent to the receipt by the husband, and was a reduction into possession by him of the claim of his wife, and precluded her right to the same by survivorship.

If a debtor of a married woman pays to her during coverture the debt, the payment enures to the benefit of the husband and the money becomes absolutely his.

The husband is entitled absolutely to all sums of money received by a third person on account of his wife during coverture.

If husband and wife authorise a third person to receive *her chose in action*, and he does receive it, her right by survivorship is gone, though it never reaches the possession of the husband.

If husband and wife unite in a letter of attorney to another to collect a legacy and he receives it, the property by that act is vested in the husband alone.

Though the law allows a married woman to hold and enjoy property to her separate use, yet such a trust should be clearly expressed before a court will sustain it against the rights of the husband.

Where a husband during coverture proposes to settle upon his wife a separate estate out of his own property, the act by which he does it must be clear and unequivocal.

The words "for me and in my name," in a power of attorney given by a wife to her husband to collect a claim due her, even if such power of attorney be regarded as the act of the husband, are not sufficient to create a separate estate in the wife in the money received under it.

The words "for her use and benefit," employed in making a gift or transfer of property to a married woman, do not convey a separate estate to her.

APPEAL from the Circuit Court for Prince Georges county. *Assumpsit* by the appellee against the appellants, for money had and received by the latter for the use of the former. Plea, *non assumpsit*. The case was submitted to the court below on a statement of facts, in substance as follows:

The plaintiff was the wife of Richard W. Turton, the defendant's testator, and with her husband was domiciled in Maryland, and was one of the legal representatives and heirs at law of the late Joseph Fowler, Jr., of the city of New Orleans, who died intestate on the 22nd of August 1850, leaving a very large estate, both real and personal. In November 1850, the said Richard W. Turton went to New Orleans to prosecute his wife's claim to her share of said estate, and when there received from her a power of attorney, dated the 13th of January 1851, by which she appointed her said husband her attorney for her, and in her name, place and stead to ask, demand, sue for, recover, have, receive and take, all and every the real and personal, movable and immovable estate, property and effects which had devolved upon and descended to her as one of the heirs at law, next of kin or distributees, or to which she was in any way entitled as a part of the succession of said Fowler, and for her and in her name, place and stead, to prosecute in any court any action necessary to recover the same, with

Turton's Exc'rs *vs.* Turton.

power to appoint and employ other attorneys and agents under him at his pleasure, as fully as if she were personally present. By virtue of this power of attorney, while in New Orleans, he executed another to John L. Dufieff and John D. Fowler, to carry into effect the purposes of the original one, but returned himself to Maryland without having received any portion of his wife's claim. On the 2nd of May 1851, Dufieff and Fowler, under the said second power of attorney, received from the curator of said estate $4459.45, part of the plaintiff's distributive share of the deceased's personal estate, and on the 7th of the same month sent to the care of Thomas J. Hall & Son, of Baltimore, a draft for the same, payable to the said Richard W. Turton, or order, drawn by J. Corning & Co., of New Orleans, on Greenway & Co., of Baltimore. All the proceedings in the courts of Louisiana for the ascertainment and payment of her said portion were prosecuted in her name. Richard W. Turton died in Maryland on the 5th of May 1851, but his death was not known to Dufieff and Fowler at the time the draft on the 7th of May was drawn in New Orleans. The proceeds of this draft were received since his death by the defendants, who are the executors of said Richard W. Turton, and they claim and hold the same as part of his assets. The plaintiff claims the same as his surviving wife.

Upon this state of facts the court below, (CRAIN, J.,) gave judgment for the plaintiff, and the defendants, in pursuance of the right reserved in the agreed statement of facts, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*C. C. Magruder* and *Thos. S. Alexander* for the appellants, argued:

1st. That the letter of attorney, executed by the appellee to her husband, was a nullity. A *feme covert* cannot execute a power of attorney. *Coke Litt.,* 42, *c.* 2 *Bac. Abr.,* 27, 42. 2 *Kent,* 130. She has no power to dispose even of her

48     v.6

separate estate, unless the instrument conferring it upon her gives her such power. 5 *Md. Rep.*, 219, *Miller & Mayhew, vs. Williamson.* 8 *Gill*, 138, *Smith vs. Morgan.*

2nd. Dufieff and Fowler were the agents of the husband, and their receipt of the money in the lifetime of the husband was a conversion by the latter, and vested it absolutely in him. The title to personal property is to be governed by the law of the domicil, (2 *Md. Rep.*, 297, *Newcomer vs. Orem*,) and the question therefore is to be decided as if Fowler had died in Maryland, and as if payment had been made by the administrator in Maryland to Dufieff and Fowler, as agents of the husband. Payment to the agent of the husband, or of the husband and wife, is a conversion by the husband. 5 *Johns. Ch. Rep.*, 196, *Schuyler vs. Hoyle.* 1 *Bright on Husband & Wife*, 16, 53. *Bac. Abr.*, 23. 6 *H. & J.*, 485, *Wallingsford vs. Wallingsford.* *Story on Agency*, sec. 6. 6 *H. & J.*, 37, *State vs. Krebs.* *Comyn's Dig.*, *Baron & Feme*, E. The distributive share of the wife's interest in the estate of Fowler belonged absolutely to her husband. *Bac. Abr.*, 23, 27, *Baron & Feme*, *C. D.* 8 *Mass.*, 229, *Shuttleworth vs. Noyes.* 2 *Conn.*, 564, *Griswold vs. Penniman.* 7 *Do.*, 420, *Cornwall vs. Hoyt.* 3 *Bos. & Pull.*, 128, *Maclean vs. Douglas.* 2 *Chitty's Rep.*, 117, *Gloucester vs. Drury Lane Theatre.*

Whenever a husband receives money of his wife the law presumes that he receives it *jure mariti*, and the parties who seek to show that this is not the fact must do so by proof. The only evidence in this record that this money was received for the use of the wife, is the power of attorney executed by the wife, but the only inference from it is that it was executed in reference to the law of Louisiana, so that the husband might represent the wife in collecting the money, but when he received it he was to receive it *as husband*, and not as trustee for the wife.

There is no case where money has been paid to the husband or to his agents that his rights do not attach. The case in 5 *Johns. Ch. Rep.*, 196, shows that the receipt by the agent was receipt by the principal, and that the power of attorney by

husband and wife was the power of attorney of the husband. In the case of *Nash vs. Nash*, 2 *Madd. Ch. Rep.*, 133, the check was not paid *in money*, but in a promissory note, which was but a *chose in action*, whilst here the *money* was actually paid over to the husband's agent.

*John M. S. Causin* for the appellee, argued, that there was no sufficient reduction of the wife's *chose in action* into possession by her husband in his lifetime, so as to prevent her right of survivorship under the act of 1798, *ch.* 101, *sub-ch.* 5, *sec.* 8. The husband could not have prosecuted the case in Louisiana and reduced the claim into possession there, for all the steps in that State must be carried on in the name of the wife. *Code of Louisiana, sec.* 2314. The estate therefore was her separate property so long as the laws of Louisiana threw their protection over it.

The husband's right to the *choses in action* of his wife is but a *qualified* one, (1 *Bright on Husband and Wife*, 36, 37,) and a distributive share is a *chose in action* as much as a bill, bond, or other specialty. This is the law of Maryland. 2 *Md. Rep.*, 297, *Newcomer vs. Orem.* 6 *H. & J.*, 37, *State vs. Krebs.* 3 *Md. Rep.*, 8, 9, *Wiles vs. Wiles.* The husband then went to Louisiana as attorney for his wife; he was to act as her agent in the settlement of the estate, and he did act solely under the power of attorney given by his wife. The sub-agents, Dufieff and Fowler, were appointed under the original power of attorney, and they therefore received the money under authority *from the wife;* they were *her* agents. The draft was not paid until *after* the death of the husband, and *he* never received it, whereas the law requires the reduction to be in his lifetime. It is essential that there should be this reduction into possession. The mere receipt of the money by the husband, if he does any act to show that he does not receive it *as husband*, will not be sufficient. *Bright on Husband and Wife*, 48. 1 *Gill*, 1, *Stevenson vs. Reigart.* The law does not favor *implied* conversions. 7 *Gill*, 268, *Mann vs. Higgins.* 5 *Johns. Ch. Rep.*, 204.

Payment to the *wife* is not a reduction into possession by the husband. *Bright on Husband and Wife*, 51, and cases there cited. 2 *Madd. Ch. Rep.*, 133, *Nash vs. Nash.* 12 *Ves.*, 497, *Baker vs. Hall.* 16 *Do.*, 413, *Wall vs. Tomlinson.* This power of attorney was recorded in the courts of Louisiana, and the fact that the husband acted under it shows that he claimed the fund, not *as husband*, but *as attorney* for his wife. The agreement of facts concedes that he acted throughout this whole transaction as the attorney of his wife; he appointed the sub-agents, not to act for *him in his individual capacity*, but to receive the money for the use of his wife. 2 *Kent*, 135, *note* 1, 138, 142, 143.

It matters not whether the power of attorney was valid or not; the question is *how* did the husband act in reference to the property? He *chose* to act as agent for his wife, and there is no law to prevent his doing this. But it is not true that the wife cannot give a power of attorney. If a *feme covert* seal a bond in the presence of her husband, and he stands by and does not dissent, it will bind him. 2 *Bac. Abr.*, 56. Bonds executed by a *feme covert* will bind her separate estate. 1 *Brown's Ch. Rep.*, 16, *Hulme vs. Tenant.* 3 *Do.*, 340, *Pybus vs. Smith.* 1 *H. & G.*, 468, 470, *Cathell vs. Goodwin.* 10 *G. & J.*, 319, 323, 324, *Hardy vs. Summers.*

MASON, J., delivered the opinion of this court.

Without remarking upon a fundamental question in this case, viz., the right of the plaintiff to enforce her alleged claim in an action at law, we will proceed to consider the principal issue involved in this controversy, which is the right of the plaintiff, by survivorship, or otherwise, to claim her distributive share of the estate of the late Joseph Fowler, of Louisiana, as against the legal representatives of her deceased husband.

The case rests upon the concession that the payment of this distributive share to Messrs. Dufieff and Fowler, *as agents*, by the representatives of Fowler, from whose estate the money was derived, was valid, and the estate was thereby discharged

from all liability to Mrs. Turton, or any one claiming through her. Under such circumstances the question is, to whose benefit does this payment enure; whether to the plaintiff, by virtue of her survivorship, or as her separate estate, or whether to the estate of her husband?

The money was paid to these agents on the 2nd of May 1851, and Mr. Turton, the husband, died on the 5th of the same month.

It will readily be admitted, that if Dufieff and Fowler were the duly constituted attorneys in fact of Mr. Turton, the receipt of the money by the agents would have been equivalent to the receipt by him. This would have been, to all intents and purposes, a reduction into possession by the husband of the claim of the wife, and would preclude her from setting up afterwards any right to the same by virtue of survivorship.

But it is asserted that Dufieff and Fowler were not the agents of the *husband*, but were in fact the agents of the wife. If this were true, the payment to them would be regarded as payment to her. We cannot perceive that this view would vary the case in any material particular.

If a debtor of a married woman pays to her during coverture the debt due, the payment enures to the benefit of the husband and the money becomes absolutely his. And in like manner the husband is entitled absolutely to all sums of money which may be received by a third person on her account during the marriage. *Abbot and wife*, vs. *Blofield, Cro. Jac.*, 644. *Bidgood vs. Way*, 2 *Sir Wm. Black.*, 1236. And if the husband and wife authorise a third person to receive *her chose in action*, who accordingly does receive it, her right to survivorship is completely destroyed by such receipt, although it should never reach the possession of the husband, 1 *Rol. Abr.*, 342; *Clancey on Husband and Wife*, 112; and so if husband and wife unite in a letter of attorney to another to collect a legacy, and he receives it, by that act the property becomes vested in the husband alone. *Huntley vs. Griffith, Moore*, 452. *Clancey*, 112.

We therefore do not think the *question of survivorship* is

properly involved in this case. In fact there was no *chose in action to survive* at the time of the husband's death. By the act of payment to Messrs. Dufieff and Fowler, which was made in the lifetime of the husband, the obligation which constituted the *chose in action* was fully discharged by the debtors, and thus became extinct. In other words, it had thereby became reduced to possession, whether by the husband or wife was immaterial. The position taken by the appellee's counsel, that the power of attorney furnishes evidence that the husband did *not intend* to reduce this *chose* into possession, cannot be maintained. This result was not dependent upon the intention or wish of the husband, but was the legal consequence of the act of payment. The debtor had a right to discharge his debt, and by the *act of payment* the *chose in action* was gone, and with it all its incidents, including the right of survivorship in the wife, and the result would be the same whether the agents to whom the payment was made were the agents of the husband or wife, as we have already shown.

Unless therefore we can discover that this money, which was derived from the Fowler estate, was to be treated as the *separate estate* of Mrs. Turton, we must regard it as having absolutely vested in the husband, by virtue of the payment to Dufieff and Fowler.

There is no pretence that there was a separate estate created in the wife, by reason of the source or mode by which she derived this money, as if it had been a legacy to her separate use. In this particular there is nothing to distinguish this case from an ordinary and unconditional inheritance of money by a wife, which is always subject, as other *choses in action,* to be reduced into possession by the husband, and which would thereby become vested in him.

It only then remains for us to inquire, whether there was a consummated purpose on the part of the husband himself to settle this fund upon his wife to her sole and separate use, after it had been received? That it was in his power to have done so we do not deny; but the inquiry is, did he intend to

exercise that power, and has he effectually done so? From the facts, as disclosed by the record, we can discover nothing to warrant such a conclusion. The husband's whole conduct was in nowise inconsistent with a fixed purpose to treat and use this money as his own. The power of attorney to be availing under the laws of Louisiana, should be the act of the wife, because under those laws, this money having descended to her, in her own right, would be regarded as hers; and although the right and succession to personal property depends on the law of the domicil, which in this instance was Maryland, yet it is not improbable that this power of attorney was executed with reference exclusively to the laws of Louisiana. If this be so, it would negative wholly the inference sought to be drawn from it, that the husband thereby intended to create a separate estate in his wife.

Although the law is so far modified by equity as to permit a married woman to hold and enjoy property to her separate use when it is given to her for that purpose, yet such a trust should be clearly expressed before the court will sustain it against the rights of the husband. And where the husband himself, during coverture, proposes to settle upon his wife a separate estate out of his own property, *Clancey on Husband and Wife, page* 260, says, "the act by which he divests himself of his property must be clear and unequivocal."

It cannot be pretended that there was any power in the wife, independent of the husband, to appropriate this fund to her sole and separate enjoyment, and if the power of attorney executed by the wife to her husband has had any such effect, it must be by reason of the supposed adoption or sanction of it by the husband. In other words, we are to regard the power of attorney as the act of the husband, and from that act we are to gather an intention on his part to create a trust in favor of his wife. Conceding that the husband has, by adoption, made the power of attorney his act, we are next to consider the legal effect of the act upon the money in controversy.

The only language employed in this instrument, out of which a separate estate in the wife could be supposed to spring, are these words, "for me and in my name." The most,

therefore, by possibility, these words could import is, that the money was to be held *for his wife.* This language is not sufficient to create a separate estate in the wife. It has been adjudged in four several cases, namely, *Johnes vs. Lockart,* 3 *Bro. C. C.*, 383; *Kirk vs. Paulin,* 7 *Vin. Abr.*, 95; *Wills vs. Sayers,* 4 *Madd.*, 409, and *Roberts vs. Spicer,* 5 *Madd.*, 491, that the words, *"for her use and benefit,"* employed in making a gift or transfer of property to a married woman, did not convey a separate estate; and if not, clearly the weaker terms used in this power of attorney could not have such an effect.

We cannot perceive that the mere circumstance that this fund was derived through the wife could vary the case, or alter the general rules in regard to the creation of separate estates in married women. Though this money descended through the wife, it became, nevertheless, as much the property of the husband, as soon as it was converted from a *chose in action* into money, as if it had always been his; and it required as strong language to divest himself of it in the one case as in the other.

From all the circumstances of this case we must conclude, that this money, when collected, was to take the usual course indicated by the law, and was to pass to and vest in the husband.

The cases collected in *Bright on Husband and Wife,* (1 *Vol., ch.* 5,) and relied on by the appellee's counsel, do not conflict with the views we have expressed. The case of *Nash vs. Nash,* 2 *Madd.*, 133, which most resembles the case now under review, is, nevertheless, in many respects materially different. The *check,* which was the *chose in action* in *Nash vs. Nash,* was not in fact *paid in cash,* but it was merged in or exchanged for a note to the wife, payable on demand, by which means the debt was not paid, and not therefore deprived of the incidents which belong to a *chose in action.* In other words, the debt continued still the wife's *chose in action,* though in a different form. In the case at bar, the money was actually paid to the wife's agents, (assuming that they were her agents,) and remained in their hands, *as money,* for five days. At the end of that time, as a means merely of transmitting the money to Maryland, it was converted into a

draft, payable *to the deceased husband.*   Thus the whole character of the claim became changed, unlike the case of *Nash vs. Nash.*

Throughout this opinion we have assumed, that this question was properly involved in the present proceeding and have so disposed of it.

We think the judgment rendered by the court below was erroneous, and therefore ought to be reversed.   As the whole case appears to be before us upon this record, we do not see that the appellee could be in anywise benefitted by a *procedendo* and therefore will not order one.

*Judgment reversed and procedendo refused.*