# FREDERICK UNGER, and ELIZABETH UNGER his wife, *vs.* JOSEPH D. PRICE.

Since the act of 1853, ch. 245, personal property purchased by a *feme covert*, in her own name, and for her own use, with money she received from the sale of her potential right of dower in her husband's real estate, cannot be taken in execution for the debts of her husband.

This act invests a *feme covert* with the powers of a *feme sole*, in reference to such property as she may be authorised to hold, whether under that act or otherwise, to her sole and separate use.

Prior to this act, the wife could, with the assent of her husband, and through the instrumentality of a trustee, convert her contingent right of dower into money, or other property, for her sole and separate use, even as against existing creditors of the husband; for such a separate estate would be derived from a source to which the creditors had no right to look for payment of their debts.

APPEAL from the Circuit Court for Washington county.

*Replevin* by the appellants against the appellee for a grey mare and wagon. Pleas *non cepit*, property in defendant, and property in a stranger.

*Exception.* The plaintiffs claimed the property as belonging to Elizabeth Unger, the wife of Frederick Unger. The defendant levied upon the property under two executions issued on the 16th of March 1855, on two judgments recovered by him against Frederick Unger, the husband, in December 1854, and purchased the same at the sale under these executions. The evidence in the case is sufficiently stated in the opinion of this court. The plaintiffs then asked three instructions to the jury:

1st. If the jury find from the evidence that the property mentioned in the declaration was purchased by William Unger, the son of Mrs. Elizabeth Unger, one of the plaintiffs, as her authorised agent, with money furnished by her to him for that purpose, since the 1st of June 1853, and that this purchase was made in her name and for her use, without reference to the right of her husband, the other plaintiff, then the property so purchased was not liable to be taken in execution for the debts of her said husband.

2nd. If the jury find from the evidence that this property was purchased since the 1st of June 1853, with money furnished by Mrs. Unger for that purpose, and was purchased in her own name and for her use as her property, and that her husband was not a party to this contract of purchase, or was not privy thereto, then the said property could not have been legally taken under execution for the debts of her husband.

3rd. If the jury believe from the evidence that Mrs. Unger purchased this property in her own name and as her own property, since the 1st of June 1853, and that the same came into

her possession under such contract of purchase, then the same became her property, and was not liable to be taken in execution for the debts of her husband.

The court (PERRY, J.,) granted these prayers with the following modification and addition to each of them:

"But if the jury shall believe that the said wagon and horse were purchased by said William Unger for his mother, (one of the plaintiffs in this action,) and that the money which was paid in the purchase of the same was paid to her, the said Elizabeth, by Henry Lyday, for her contingent right of dower in land 'purchased by said Henry Lyday, and that the said property was levied upon and sold to said Price (the defendant in this action,) by virtue of executions issued on judgments recovered against said Frederick Unger in the month of December 1854, then the plaintiffs are not entitled to recover."

To the giving of this additional or modified instruction, the plaintiffs excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, TUCK and MASON, J.

*Richard H. Alvey* for the appellants argued:

That the prayers submitted by the appellants propounded the law correctly, and ought to have been granted without addition or modification. The act of 1853, ch. 245, provides by its 1st section, " that the property, real and personal, belonging to a woman at the time of her marriage, and all property which she may acquire or receive after her marriage, by purchase, gift, grant, devise, bequest, or in a course of distribution, shall be protected from the debts of the husband, and not in any way liable for the payment thereof; *provided* that no acquisition of property passing to the wife from her husband, after coverture, shall be valid, if the same has been made or granted to her in prejudice of the rights of his subsisting creditors." And it is further provided, by the 3rd section of this act, " that it shall not hereafter be necessary to interpose a trustee, in order to secure to a married woman the sole and

separate use of her property." This law was passed in order
to carry out the provision of the 38th section of the 3rd article
of the constitution, which directs the Legislature to " pass laws
necessary to protect the property of the wife from the debts of
the husband during her life, and for securing the same to her
issue after her death." Upon the proper construction of this
act of Assembly, the property in question was acquired by the
wife by *purchase*, and was not in any way liable for the debts
of the husband. The act must be liberally, and if necessary
to effectuate the objects contemplated by it, equitably construed.
4 *G. & J.*, 152, *Canal Co. vs. Rail Road Co.* 4 *Md. Rep.*,
1, *Cassilly & Wife, vs. Meyer*. 1 *Kent's Com.*, 462 to 464.
8 *Md. Rep.*, 461, *Logan vs. McGill & Wife*. The contract
of purchase being made for Mrs. Unger in her name and for
her use, and with which her husband had no privity or con-
nection whatever, no right could vest in him under such con-
tract, except by virtue of his marital relations, and all property
so acquired falls within the exemption of the act of 1853.
But even if this property be not acquired in the mode specified
by the first section of this act, it would, prior to the passage of
this act, have been competent for the wife, with the assent of
her husband, to have sold her *potential right of dower* in his
real estate, and to have received the money to her *sole and
separate use*, through the intervention of a trustee, and this
would have been good against the existing creditors of the
husband, because such separate estate would have been derived
from a source to which the creditors had no right to look for
payment of their debts. 1 *Story's Eq.*, sec. 367. 11 *Ala.
Rep.*, 386, *Hoot vs. Sorrell*. They had no claim against the
*wife's dower*, and could not reach it for their debts. This pro-
perty, then, the wife could have held prior to the act of 1853,
through the *instrumentality of a trustee*, and the 3rd section
of that act *dispenses* with the necessity of a trustee in *any case*
where the wife has separate estate, no matter from *what source*
it may be derived, whether in the *mode pointed out* by the 1st
section of that act, or in any other way.

*Daniel Wiesel* for the appellee argued:

That the money paid to Mrs. Unger for her contingent right of dower in her husband's land, became immediately the husband's and that her possession of it was his possession, and the property purchased by her with it became his also. All personal property accruing to the wife during coverture, including *choses in action*, vests in the husband, at common law, and can be taken for his debts by attachment, or under execution. 6 *H. & J.*, 31, *State vs. Krebs.* 2 *Md. Rep.*, 297, *Newcomer vs. Orem.* 4 *Do.*, 280, *Peacock vs. Pembroke.* The act of 1853, ch. 245, which went into operation on the 1st of June 1853, has not changed the law governing this case. The contingent right of dower disposed of was not *property belonging to wife at the time of her marriage;* this clause meaning *maiden property*, or what the wife had *before and at the time* of marriage. Nor was it property which she acquired or received *after her marriage* by *purchase, gift, grant, devise, bequest*, or *in a course of distribution;* the word *purchase*, in this clause, being restricted to cases where the wife had means of her own, or a separate estate with which to purchase, and to which the marital rights of the husband did not attach. The word is not used in a strict technical sense, as is obvious from the other modes of acquisition there specified, nearly all of which are, in legal technical language, acquisition by *purchase.* In this case the husband owed the appellee, by judgments in December 1854, and the deed to Lyday by him and his wife was made in February 1855, when the wife received the $300 from Lyday. If it be pretended that this money, or the property purchased with it, passed to the wife from her husband during coverture, the proviso to the 1st section of the act of 1853, renders her title void as in prejudice of creditors, or of the defendant as a then subsisting creditor. If the property was derived in any way not specified in this act, then before it can become the separate estate of the wife, it must appear to have been settled upon her; there must be a clear purpose manifested by the parties to create in the wife a separate estate in this particular fund. There is no such purpose manifest in

this case. 6 *Md. Rep.*, 375, *Turton vs. Turton*, and the cases there cited.

There is another view of this case. These parties were married *before* the constitution was adopted, and this act of Assembly made in pursuance thereof was passed. By this marriage the husband had a right to all the personal property which might come to the wife *during the marriage*. The wife saw fit to sell her potential right of dower in her husband's real estate, and *take the money for it*. This *money*, therefore, is an acquisition of personal property by the wife *during a marriage* which occurred before this law was passed. No subsequent law can affect the right of the husband to this property, because it would *divest* him of a *vested* right acquired by the marriage.

MASON, J., delivered the opinion of this court.

In December 1854, Frederick Unger, one of the appellants, conveyed all his real estate to Adam Shank, in trust for his creditors, in which conveyance his wife Elizabeth did not join.

Afterwards, Shank, the trustee, sold the real estate to Lyday, and Lyday being anxious to disincumber the estate of the contingent dower right of the wife, agreed with and did purchase of Mrs. Unger her potential right of dower in the land, for the sum of $500, and Mrs. Unger, together with her husband, made to Lyday a deed in order to extinguish the dower right. The purchase of the potential dower estate, and the payment of $300 in cash thereon by Lyday, occurred in the latter part of February 1855, the said purchase money being paid directly into the hands of Mrs. Unger.

The evidence tended further to show, that with the money thus acquired the wife purchased the property now in controversy, in her name and for her use. Subsequently, the appellee levied upon the same to satisfy an execution against the husband, and hence this action.

The cases cited and relied upon by the appellee's counsel, arose under the law as it existed prior to the act of 1853, ch. 245. That act has materially modified the law as to the rights of the husband, over the property of his wife. As the law

previously stood even, we have no doubt that it would have been competent for the wife, with the assent of her husband, and through the instrumentality of a trustee, to have converted her contingent or potential right of dower into money or other available property, for her sole and separate use, and such a design would not have been affected by the circumstance that the husband had creditors at the time, for the obvious reason that such a separate estate would be derived from a source to which the creditors had no right to look for payment of their debts. 1 *Story's Eq.*, sec. 367. *Hoot vs. Sorrell*, 11 *Ala. Rep.*, 386. The third section of the act of 1853 authorises the wife to hold property, to her sole and separate use, without the interposition of a trustee, and the whole scope and purpose of the law seem to be, to invest a married woman with the powers of a *feme sole*, with reference to such property as she may be authorised to hold and enjoy, whether under the act of 1853 or otherwise, to her sole and separate use. Therefore it matters not, whether the property acquired by the wife from the sale of her contingent right of dower, be embraced within the strict letter of the first section of the act or not; that is, whether it be acquired "by purchase, gift, grant, devise, bequest, or in course of distribution." It is property acquired from a source wholly independent of her husband, and therefore not held "in prejudice of the rights of his subsisting creditors," and being invested with power under the act of 1853 to hold property as a *feme sole*, we think the property in controversy passed to Mrs. Unger as her separate estate, "protected from the debts of the husband, and not in any way liable for the payment thereof."

The object of the act of 1853 was to extend, not to curtail the rights of married women, and although this case may not have been embraced strictly within the terms of the first section, (although we do not decide that it is not,) yet surely it cannot be on that account inferred, that its framers designed to deprive the wife of rights which she could have enjoyed independent of the act, merely because those rights were not specifically enumerated, and especially too as the third section increases

the facilities by which they can be enjoyed, namely, by dispensing with the necessity of a trustee.

Unlike the case of *Turton vs. Turton*, 6 *Md. Rep.*, 375, and the other cases cited by the appellee's counsel, here was a clear purpose manifested by the parties, to create in the wife a separate estate out of her contingent right of dower.

We are, therefore, of the opinion, that the instructions given by the circuit court were erroneous. The prayer as asked by the plaintiff's counsel, resting upon the theory announced in this opinion, ought to have been granted without any modification.

*Judgment reversed and procedendo awarded.*