Taggart *vs.* Boldin & Thayer.

---

## SUSAN A. M. TAGGART *vs.* CHARLES BOLDIN and JOHN M. THAYER.

Though, since the acts of 1852, ch. 133, and 1853, ch. 344, an answer not sworn to, and not required by the bill to be under oath, is not evidence, yet it may be looked to for the purpose of ascertaining what is the matter in issue between the parties.

Under these acts, the bill and answer when not sworn to, or where the answer is not read in evidence *as such* by the complainant, are only to be regarded as *pleadings* in the cause exhibiting the points in dispute, like the pleadings in a suit at law.

The receipt by the *husband*, of money due upon notes given to the *wife* for the purchase money of *her real estate*, is such a *reduction into possession* and conversion to his use as to make it liable to the claims of *his creditors*.

As soon as the purchaser passed his notes to the wife for the purchase money

of the land, the mutation from real to personal estate was complete, and the right of the husband to sue for their recovery in his own name perfect, and they could, therefore, be reached by his creditors.

The act by which a husband divests himself of his property, and creates a separate estate in the wife, must be *clear* and *unequivocal.*

The declarations of a party in favor of his *own title* are inadmissible.

A will itself is its best exponent, and any declarations of witnesses contrary to its plain import are inadmissible.

APPEAL from the Equity Side of the Circuit Court for Allegany county.

The bill in this case was filed by the appellees, to vacate as fraudulent a deed from Daniel M. Stoup to Susan A. M. Taggart, for Lot, No. 14, in the town of Oakland, and to compel Stoup to convey the same to them, and for an account of the rents and profits from the date of their purchase under execution upon their judgment. The allegations of the bill and answer are fully stated in the opinion of this court, as is also the testimony of the witnesses, *Townshend, Stoup* and *Burton.*

*Michael V. Kildow* proved that Mr. Taggart, in October 1852, a few days before he absconded, told witness that the deed was to be made to his wife for her house, and that he had previously informed witness that the money he had received by his wife was to be invested in real estate for her use as a house.

*James Bosley* proved that Mrs. Taggart's father left her $200 for the purpose of buying her a house; that this money was paid to her by her brother, Jonathan Rinehart, which her husband invested in the purchase of a tract of land for the use of his wife, which land witness purchased about the year 1846; that subsequently Mrs. Taggart informed witness that she desired to have the money to pay for her house and lot in Oakland, in which she now lives; that witness then sent to Mr. Taggart the purchase money, being $260, including interest; that Mr. Taggart remarked that he would use the money in his business for the time, and afterwards pay it over to Townshend for the lot; that witness gave his notes payable to Mrs. Taggart when he purchased the land, and took them

up when he paid the money to Mr. Taggart for her use; that witness frequently heard Mr. Taggart say that he had bought lot No. 14 for his wife as a home for her, and that he would not spend her legacy from her father for any other purpose; that witness heard Mr. Taggart tell Stoup that as soon as he was paid the deed must be made to Mrs. Taggart, and heard Stoup say the same repeatedly; witness heard this conversation and these declarations a short time after he paid the money to Mr. Taggart.

*John G. Rinehart*, a brother of Mrs. Taggart, proved that his father, George Rinehart, left at his death to Mrs. Taggart $200 or $250, to remain in the hands of Jonathan Rinehart until she should make a demand for the same, to purchase herself a home; that soon after the lot No. 14 in Oakland was purchased, Mrs. Taggart, in the presence of her husband, requested witness to notify Bosley that she needed the money to pay for the lot, and that Mr. Taggart then said to witness that he had sold the land to Bosley, and intended the money to be used in payment of the lot in Oakland for her home, as it was her money.

The will of George Rinehart shows that he bequeathed "to his daughter, Susan Taggart, two hundred dollars," to be paid to her by his son, Jonathan Rinehart, who was named as one of his executors, "five years after" the testator's death.

The complainants filed exceptions to so much of the testimony of the above witnesses as professes to detail the declarations of Mr. Taggart and his wife, or to state for what purpose the legacy was left to Mrs. Taggart by her father.

The case being heard upon bill, answer and proof, the court below, (PERRY, J.,) delivered the following opinion, accompanying the decree:

"It is certainly well settled that purchasers at a judicial sale, made to pay a claim against an indebted party, have the right to avail themselves of the provisions of the *statute* of 13*th Elizabeth, ch.* 5. 1 *Amer. Lead. Cases*, 57 to 62. 2 *Johns. Ch. Rep.*, 49. 2 *Md. Ch. Dec.*, 447.

"It is equally well settled that secret equities between husband and wife, arising from parol contracts after marriage,

should never be regarded as good against creditors. 1 *Md. Ch. Dec.*, 523, *Brooks vs. Dent.* 5 *Md. Rep.*, 66, *Albert & Wife, vs. Winn & Ross.* Such being the law, I cannot see how the claim of Susan A. M. Taggart can be maintained. All the testimony to prove her right is of a loose character, and, if esteemed sufficient, would be setting up secret equities between husband and wife that would be in direct opposition to the design and spirit of our registry laws, and there would be no protection to creditors who would rely upon the means and property of those who may be trusted. The money paid by the wife was the property of the husband. It was paid to her to discharge an indebtedness incurred to the husband, and I have seen no authority which establishes the doctrine, that the parol declarations of the husband and wife in a contest with creditors could make it the property of the wife. If White & Co. had given a note to Mrs. Taggart, payable to her, the debt, in law, was due to her husband, and vested in him. 4 *Md. Rep.*, 280, *Peacock vs. Pembroke.* It therefore follows as a necessary consequence that an agreement between Taggart and his debtor to have the money paid to his wife, would not make it the money of the wife, but it must, in legal contemplation, vest in the husband. It was his money, the proceeds of the goods. She had no separate or trust estate in it, and he could not, under such circumstances, guard it from all the legal remedies given by the law to his creditors, no more than was done in the case of *Peacock vs. Pembroke.*

"The question in the case which has been to me the most perplexing, is in regard to the extent of the complainants' claim. Are they entitled to a decree, on condition that they pay the purchase money advanced to the vendors of the lot after the levy of the attachment, or are they entitled to the property free from such condition? At the time of the levy of the attachment the defendant in that process had an equitable title, and it is urged, was then indebted for a balance of the purchase money. There is no doubt that before the judgment of condemnation the balance of the purchase money was paid. Esteeming the money paid as belonging to the husband, the payment, in my opinion, enures to the benefit of the purchasers

of the lot. The payment was made before the judgment of condemnation, and the lot was sold after that period. In the case of *Glenn, Garn., vs. Boston & Sandwich Glass Co., 7 Md. Rep.,* 287, the court say: 'It has been the general prac- tice under our attachment system, under the authority of the 5th and 6th sections of the act of 1795, ch. 56, to condemn all credits or property in the hands of the garnishee of the debtor at the time of trial.' It is true in this case it is not shown that there is a garnishee. If the property of the defendant in the hands of a garnishee *at the time of the trial* is condemned, no good reason can be seen by me why such should not be the case here. If the defendant pays judgments or other liens on real property after the levy of an attachment, it will, in my view of the law, be as effectual as if done by a stranger. It has been urged that the wife paid, in addition to the sum due for purchase money, $75, and for that she has a lien upon the lot, and the court should protect her to that amount. In this I do not agree. It was a voluntary payment by her and was not necessary to protect the title. Indeed the motive seems to have been that which embarrassed the rights of creditors. It was to procure a conveyance of the legal title to herself. It was her folly to have been influenced to advance her money to the grantor, and however I might regret her misfortune in being thus deprived of her means, it is not in my power to aid her. I find myself environed by legal and equitable principles which forbid it. With these views, I will pass a decree giving to the purchasers that relief to which the above opinion indi- cates they are entitled.''

A decree was then passed vacating the deed, and directing Stoup to convey the property to the complainants, from which the defendant, Mrs. Taggart, appealed.

The cause was argued before LE GRAND, C. J., ECCLE- STON, TUCK and MASON, J.

*J. H. Gordon* for the appellant, argued, that the decree was erroneous, for the folllowing reasons:

1st. The complainants show by their bill that James Tag-

gart had an equitable estate in the lot, out of which his wife is entitled to a dower interest under the act of 1818, ch. 193, sec. 10, but the decree divests her of that interest, and is therefore erroneous. 3 *Gill*, 304, *Miller vs. Stump.* 5 *H. & J.,* 315, *Ford vs. Philpot.*

2nd. Purchasers are not within the statute of 13*th Elizabeth, ch.* 5. *Sugden on Vend.,* 453. 1 *Amer. Lead. Cases,* 50, 51, 60, and authorities there cited. 3 *Monroe,* 158, *Crozier vs. Young. Roberts on Fraudulent Conveyances,* 463.

3rd. The declarations of Taggart and those of his wife are admissible in evidence as part of the *res gestæ,* to show that he had received the money of his wife, as her agent, for the purpose of managing and investing it for her use by an agreement with her for that purpose, and with no intention to convert it to his own use, or to change the property in it. 1 *Greenlf. on Ev.,* secs. 108, 109. *Sugden on Vend.,* 445. 10 *Ves.,* 511, *Linch vs. Linch.* 2 *Md. Ch. Dec.,* 108, *Williamson vs. Norton.* 4 *Md. Rep.,* 330, *Crane vs. Gough.* 8 *Barr.,* 189, *McDowell vs. Potter.* 1 *Do.,* 327, *Gray's Estate.*

4th. To divest a wife of her personal property by the act of her husband, there must be a reduction into possession by him, *accompanied by an intent to convert it to his own use.* 12 *Ves.,* 497, 501, *Baker vs. Hall.* 16 *Do.,* 416, *Wall vs. Tomlinson.* 2 *Sergt. & Rawle,* 491, *Lodge vs. Hamilton.* 2 *Kent's Com.,* 135, note (e,) 138. *Bell on Prop. of Hus. & Wife,* 55, 57. 5 *Whart.,* 138, *Hind's Estate.* 4 *Rawle,* 476, *Siter's case.* 8 *Barr.,* 189.

5th. Taggart could not have reduced the legacy of his wife into possession without the aid of a court of chancery. *Ward on Legacies,* 386. 5 *Ves.,* 516, *Blount vs. Bestland.* And neither the husband nor his representatives could have got possession of it, without first making a provision for the support of the wife and her children. 2 *Johns. Ch. Rep.,* 206, *Howard vs. Moffatt.* 4 *G. & J.,* 290, *Duvall vs. Farmers Bank.* 3 *Md. Ch. Dec.,* 94, *McVey vs. Boggs.*

6th. There is sufficient evidence to show that the legacy was obtained from the executor of George Rinehart, by an understanding or agreement between the husband and wife

that it should be preserved and managed by the husband for the separate use of the wife. And if it was so obtained its character of separate property could not be changed without her consent, of which there is no evidence. 2 *Kent's Com.,* 135, *note (e,)* 138. 5 *Whart.,* 138. 1 *Md. Ch. Dec.,* 523, *Brooks vs. Dent.*

7th. Taggart, as the agent and trustee of his wife, received $260 from Bosley as purchase money for her real estate, and therefore became her debtor to the amount of $200, which sum was repaid to her by White & Co., with the consent of her husband, and applied by her to the discharge of the claim of Stoup on the lot. This $200 being repaid to her as her own money, was so as much as before it went into the hands of her husband, and the payment to Stoup was a proper application of it to its original purpose. 5 *Whart.,* 143.

8th. There is no allegation in the bill, and no evidence to show that Taggart was indebted in the year 1850, the time the agreement for the sale of the lot was made, and the $100, part of the purchase money, paid. If therefore that sum was paid then as an advance for her, it vested an equitable interest in her in the lot to that amount. 1 *Amer. Lead. Cases,* 51, 60, *Wheaton vs. Sexton.* 19 *Wend.,* 416, *Guthrie vs. Gardner.* 1 *Daniel's Ch. Pr.,* 411. 9 *Pet.,* 483, *Harrison vs. Nixon. Roberts on Fraudulent Conveyances,* 463. The act of 1832, ch. 302, does not help this defect in the bill, for that act only applies to *insufficient* allegations; it does not attempt to *make* a bill where there are *no allegations at all.* There is moreover no direct statement in the bill that the $200 paid by Mrs. Taggart was the money of her husband. 1 *Daniel's Ch. Pr.,* 411, *note* 1, 412, 413. 22 *Pick.,* 58, *Wright vs. Dame. Stephens on Pl.,* 426. 9 *Pet.,* 502, 503.

9th. The receipt of the money of his wife is a good consideration under the proviso of the statute of 13*th Elizabeth,* and although the deed being to the wife would raise an implication of a trust which would show a want of *bona fides,* yet that implication is refuted and explained away by the circumstances of this case. 1 *Smith's Lead. Cases,* 4, *Twine's case.* 4 *Wheat.,* 503, *Wheaton vs. Sexton.*

*Thomas Devecmon* and *Geo. A. Pearre* for the appellees, argued, that the facts of the case show, that the lot was originally purchased by Taggart from Townshend, in the year 1852, and a part of the purchase money paid by him; the name of his *wife not being mentioned* in connection with it; that the balance ($200) of the purchase money was advanced by Stoup for Taggart's accommodation in March 1852, and Townshend requested to convey the lot to Stoup for his security, and the wife's name not mentioned *even then;* that Stoup was repaid the sum he had advanced with money belonging to Taggart; that no part of the legacy of Mrs. Taggart, or of the money belonging to her, was used in the purchase. Bosley states that he paid the money due by him to Mrs. Taggart over to the husband, but does not state *at what time* he paid it; but says that a short time after he paid it he heard Taggart tell Stoup that on his being repaid he should make the deed to his wife, and Stoup says this was a short time before Taggart left. Taggart then received the money and did not use it in his business, but absconded with it. Not a cent of money, therefore, of the wife was ever paid on the property.

If we are correct in these positions of fact, the decree will of course be affirmed. But if we are mistaken in these positions, we then insist:

1st. That purchasers at a sheriff's sale are entitled to all the rights of creditors, under the statute of 13*th Eliz., ch. 5.* 2 *Johns. Ch. Rep.*, 49, 50, *Hildreth vs. Sands.* 1 *Amer. Lead. Cases*, 62. 3 *Md. Rep.,* 423, *Spindler vs. Atkinson.* 10 *Ves.*, 510, *Lench vs. Lench.*

2nd. The declarations of Taggart and his wife are not admissible in evidence as part of the *res gestæ,* because they were not made *at the time* of the original purchase from Townshend, nor of the contract when Stoup advanced the money, nor of the deed from Stoup to Mrs. Taggart. Not being made *at the time* of these matters, they cannot be regarded as part of the *res gestæ.* 1 *Greenlf. on Ev.,* sec. 108. 1 *Md. Ch. Dec.*, 523, *Brooks vs. Dent.* 11 *G. & J.*, 33, *Franklin Bank vs. Steam Navigation Co.* 12 *Do.*, 454, *Miles vs. Knott.* 6 *Md. Rep.*, 428, *Bowie vs. Stonestreet.*

The husband, himself, could not be a witness for the wife, although in reference to her separate estate. 1 *Greenlf. on Ev.*, sec. 343. 5 *Md. Rep.*, 231, *Miller & Mayhew, vs. Williamson.* 2 *Md. Ch. Dec.*, 107, *Williamson vs. Morton.* The declarations of Taggart are also inadmissible, because he is a party to the suit. 1 *Greenlf. on Ev.*, sec. 347.

3rd. The legacy in this case was actually paid by the executor to Taggart, and by him invested in land for the wife's benefit. Bosley bought this land and gave notes for the purchase money, payable to Mrs. Taggart. Now the husband could have recovered these notes at law in his own name, without any resort to a court of equity, and they were of course liable to be reached by his creditors. 3 *Md. Rep.*, 1, *Wiles vs. Wiles.* 6 *Md. Rep.*, 381, *Turton vs. Turton.* *Story on Prom. Notes, sec.* 88. 4 *Md. Rep.*, 280, *Peacock vs. Pembroke.* 1 *Chitty's Pl.*, 28, *a.* But not only was this the case, but the husband actually collected and received the money on the notes. It is idle, therefore, to talk about his not having reduced them into possession. The case is infinitely stronger than those cited, where the relief to the wife was refused. 4 *Md. Ch. Dec.*, 327, *Wylie vs. Basil.* 5 *H. & J.*, 372, *Jones vs. Slubey.* 4 *H. & J.*, 551, *Dorsey vs. Clarke.* 2 *Md. Rep.*, 25, *McElderry vs. Shipley.*

4th. The court will not establish a secret equity between husband and wife, to the prejudice of creditors, under the circumstances of this case. 1 *Md. Ch. Dec.*, 523, *Brooks vs. Dent.* 4 *Do.*, 327. 2 *Md. Rep.*, 365, *Faringer vs. Ramsay.* 6 *Do.*, 428, *Bowie vs. Stonestreet.*

5th. The decree in this case does not controvert the act of 1818, ch. 193, sec. 10. That act only gives dower to the wife in equitable estates of which the husband *dies* seized. If the husband parts with it in his lifetime, and, *a fortiori*, if sold from him under judicial process, the wife is not dowable. 3 *Gill*, 311, *Miller vs. Stump;* 1 *Md. Ch. Dec.*, 454, and 3 *Do.*, 363, *Bowie vs. Berry.*

6th. Nor is there any force in the objections urged against the averments of the bill. Our *judgment* was a *lien* upon the land prior to the execution of the deed to Mrs. Taggart. We

stand, therefore, in a better position than *general creditors*, for our judgment was evidence *against the world.* 1 *Greenlf. on Ev.,* sec. 538. But if there is any force in these objections it is *too late* now to urge them, no exceptions to the averments of the bill having been filed in the court below. *Act of* 1832, *ch.* 302, *sec.* 5.

Le Grand, C. J., delivered the opinion of this court.

The bill filed in this case had for its purpose the procurement of a decree setting aside a deed from Daniel M. Stoup to Susan A. M. Taggart, and to compel Stoup to make a deed to the appellees. The facts set out and alleged in the bill may be thus stated: that on the 25th day of October 1852, a writ of attachment on warrant was sued out of the circuit court in favor of John Hoye, against James Taggart, and levied by the sheriff, upon the same day, on lot No. 14, in Oakland, and duly returned to the January term, 1853, of said court, and judgment of condemnation then rendered; that on the 6th of December 1853, execution issued upon this judgment, and the lot was purchased thereunder by the appellees. The bill then charges, that prior to the issuing of the attachment, one Townshend had agreed to sell the lot to James Taggart, and, in pursuance of said agreement, it was so sold, and a payment of a part of the purchase money actually made to Townshend by James Taggart; that it was agreed between Townshend, and Stoup, and Taggart, if Stoup would advance the remainder of the purchase money to Townshend, the latter should make a deed to him of the lot which he should hold until he was refunded the amount advanced, and accordingly the amount was advanced by Stoup. It is alleged that the appellant, Susan, obtained from White & Co., debtors of her husband, James, $200, with which she repaid Stoup, who then deeded the property to her in her own name. The object of the bill is to set aside this deed, and to procure an account of rent and profits, &c.

The bill did not call for answer *under oath,* and, therefore, since the passage of the acts of Assembly of 1852, chapter 133, and of 1853, chapter 344, the answer of Mrs. Taggart is not

15     v.10

*evidence* in the cause, it not having been read *as such* by the
complainants.   The cause must, therefore, be determined by
the averments of the bill and the testimony.   Although, since
the passage of the acts to which we have referred, an answer
not sworn to, and not asked by the complainant to be sworn
to, is not evidence, yet it may be looked to for the purpose of
ascertaining what is the matter in issue between the parties.
As we understand the acts of 1852 and 1853, the bill and an-
swer, when not sworn to, or where the answer is not read in
evidence *as such* by the complainant, they are only to 'be re-
garded as the *pleadings* in the cause, exhibiting the points in
dispute, like unto the pleadings in a suit at law.   This is the
only sensible interpretation, in our judgment, of which the
acts of Assembly are susceptible.   We, of course, do not in-
clude in these observations bills of discovery; they are expressly
exempted by the language of the act of 1853, from the opera-
tion of its provisions, nor do we embrace the case where the
cause is set down for hearing on bill and answer only.   On the
latter point, see the case of *Warren vs. Twilley*, decided at this
term, *(ante* 39.)   With this explanation we proceed to state the
nature of the defence set up in the answer of Mrs. Taggart.
In substance it amounts to this: that her deceased father,
George Rinehart, bequeathed to her a legacy of $200, in the
year 1840, payable five years after his death; that prior to the
year 1846, the executors of his last will paid over the legacy,
which was by her husband, James, invested in land *for her
use;* that this land was subsequently sold to one Thomas
Bosley, about the year 1846, and the notes for the purchase
money were given by Bosley, payable to *Mrs. Taggart.*
These notes, with interest, in all amounting to $260, were
paid by Bosley to James, the husband of the appellant, Susan;
that a lot, the one in question, was purchased by her husband
*for her*, from one Townshend, on which $100 was paid at the
time, leaving due therefor $200, the whole purchase money
being $300; that in March 1852, Townshend, Taggart and
Stoup made an agreement by which it was stipulated Stoup
should advance the residue of the purchase money, to wit,
$200, and as security for its repayment to him, he was to re-

ceive the deed for the property from Townshend, and to hold the same until the sum should be refunded; that the sum advanced by Stoup was repaid by money received from White & Co., by Mrs. Taggart, that firm being indebted to Mr. Taggart to the amount of $200; this sum was paid to Stoup, and in consequence thereof, and in pursuance of the original understanding, Stoup made a deed of the property to Mrs. Taggart. It is this deed which the bill asks may be set aside. Mrs. Taggart claims the $200 received from White & Co., and paid by her to Stoup, as part of her separate estate; that her husband had previously got that amount of her money, being a legacy left her by her deceased father.

This statement of the averments of the bill and answer will sufficiently exhibit the points at issue between the parties.

Townshend, from whom the lot was purchased, states that the lot was purchased by James Taggart from him in April or May 1850; that he did not know Mrs. Taggart in the matter, and that Mr. Taggart did not tell him the purchase was for his wife. Stoup testifies that a short time before James Taggart absconded, he called on the witness and told him that he would give him an order on White & Co. for $200, in payment of the amount he had advanced on the lot, and that when he received the amount, he wished him to make the deed to his wife, Susan; this was the first time the wife's name was mentioned in connection with the transaction. Burton, one of the firm of White & Co., testified that he paid the money to Mrs. Taggart, as the *agent* of her husband, James, and Stoup, that he was present at the time of the payment, and that the money so received by Mrs. Taggart was immediately by her paid over to him.

The principles which are to determine this cause, arise out of the facts thus given. The main question is: conceding that the money which was paid by Bosley to James Taggart, was the amount due by him for land purchased by him of the estate of Mrs. Taggart, was the reception and use of it by the husband such a reduction into possession and conversion to his own use as to make it liable to the claims of his creditors?

We think it was such a conversion. The doctrine applica-

ble to cases similar to this, has been reviewed on more occasions
than one, by this court, and inasmuch as the decisions hereto-
fore given are to control our present judgment, it would be
useless to travel beyond them, and we do not, therefore, pro-
pose to do so.   The case of *Peacock vs. Pembroke, Gar. of*
*Russell & Clarke*, 4 *Md. Rep.*, 280, collates with sufficient
fullness the decisions to which we refer.   It was very like, in
some of its facts, the one now before us.   It was an attach-
ment issued at the instance of the plaintiff, who was an as-
signee of a judgment against Russell, and laid in the hands of
Pembroke, as garnishee.   At the trial, it was proved that
Pembroke had admitted that he had purchased from Russell
and wife the latter's interest in a piece of land, and executed
his bonds for the same, upon which he still owed about $200;
that the land sold was the maiden land of the wife, and the
notes *were drawn payable to her*, and that the attachment in
the case was for a debt due *from* the husband, Russell, to the
plaintiff.

There was no contest in the case as to whom the land be-
longed, nor was there any as to the fact as to whom the bonds
were made payable; and thus in these particulars it is identical
with the one now under consideration.   See also *Turton's*
*Exc'rs vs. Turton*, 6 *Md. Rep.*, 375.   On the facts we have
given, the following instruction was asked from the court below,
to wit:  "That if they (the jury) find that the garnishee, Pem-
broke, had purchased from Russell and wife the maiden land
of the wife, and the notes for the payment of the same were
in her name, and the debt, for the recovery of which this ac-
tion was brought, was due by Russell, the husband, alone,
then the plaintiff is not entitled to recover."

What was asked in that case, is what is asked in this, and
nothing more nor less.   But the Court of Appeals, in that
case, said no, and declared the principle involved had been
fully settled in that of the *State vs. Krebs*, 6 *H. & J.*, 31, to
say nothing of other cases and treatises which might have been
cited.   They proceeded to say, in the language of the *State*
*vs. Krebs:*  "Let the law be considered as settled, that the hus-
band may sue in his own name for money situated as this is,

and it seems to follow, necessarily, that it may be attached by the husband's creditors, to satisfy a debt due by him." And we add, in the words of the same authority, that *"the bond passed to the wife* by the purchaser, is a chose in action, liable to be sued for and recovered by the husband at his pleasure." We are, therefore, of the opinion, that so soon as Bosley passed the notes to the wife of Taggart, the mutation from real to personal property was complete, and the right of the husband to sue for their recovery perfect; and, this being so, they could be reached by his creditors.

To avoid all misapprehension as to our views of this case, and the principles on which it is decided, we add, there is nothing adequate, in our judgment, to show Mrs. Taggart had a separate estate in the property originally purchased by the husband, with the money obtained from the bequest of her father. Nor is there sufficient proof that the lot purchased from Townshend was originally purchased for the separate estate of Mrs. Taggart. The evidence of the witnesses, so far as it relates to what the will of her father contained, is excepted to, as are also the statements of Mrs. Taggart. The will of the father is its best exponent, and anything contrary to its plain import is inadmissible, and so are the declarations of Mrs. Taggart in favor of her title. To use the language of *Clancey on Husband & Wife,* adopted in *Turton vs. Turton,* 6 *Md. Rep.,* 383, "the act by which he (the husband) divests himself of his property, must be clear and unequivocal." No such certainty appears in this case, and, therefore, for the reasons assigned, the decree must be affirmed; but, under the peculiar circumstances of this proceeding, without costs in this court.

*Decree affirmed, but without costs in this court.*