EDGAR PLUMMER and ELIZABETH A. PLUMMER, his
Wife *vs.* SAMUEL J. JARMAN, ALEXANDER HARD-
CASTLE and GEORGE W. KUGLER.

*Rights of Judgment Creditors—Right of the Husband to money
arising from the Sale of his Wife's inheritance, made Prior to
the adoption of the Code—Resulting trust—Secret parol
trust—Statute of Frauds—Mortgage of Equitable interest.*

The real estate of J. T., deceased was sold in 1856, by commissioners appointed
under the descent laws of Maryland.  E. P., who had married a daughter
of the deceased, purchased a portion of said land and held possession and
use of it, holding himself out as the owner, and dealing with it as his own
until the year 1872, but obtained no deed therefor.   The sale was confirmed
by the Court, and the purchase money was paid in instalments, the receipts
therefor being executed to E. P., as the party paying the money.   The last
payment was made on the 25th of April, 1872, with money borrowed by E.
P. from R. S.   On the 11th of April, 1872, and before all the purchase
money was paid, the wife of E. P , in her own name filed a petition in the
Court in which the proceedings were pending, which was sworn to by her
husband, setting forth that the deed had not been made for said land, that
the *purchase money had been fully paid,* and that such payment was made
with money due her from her father's estate, being her *sole and separate prop-
erty,* and "that it was understood and agreed between herself and her hus-
band, that the said land should be conveyed to her by the said commis-
sioners," whereupon she prayed that the Court would direct the surviving
commissioner to convey the said land to her.   The Court on the same day
ordered that the said deed be made to her, upon the commissioner being satis-
fied that the whole purchase money had been paid, and on the 2nd of May,
1872, a deed was made to her accordingly.   Upon a bill filed by judgment
creditors of the husband, under a judgment rendered in September, 1871,
and before the date of the deed, to have the said deed set aside as against
them and other subsisting creditors of the husband, it was HELD :

1st. That whatever rights the complainants may have had at the time of said
*ex parte* order, as creditors of E. P., the same remained unaffected by said
order or the deed made in pursuance thereof.

Plummer and Wife *vs.* Jarman, *et al.*

2nd. That the money arising from the sale of the wife's inheritance was not her separate estate, as it would be now under the provisions of the Code, but, on the contrary, it was subject to the control of the husband by virtue of his marital rights.

3rd. That the husband's rights having attached, the money, as it was received by him, was at his disposal absolutely, and any mere promise that he might have made to his wife as to its application, was purely voluntary and without consideration.

4th. That this was not the case of a resulting trust, the legal estate never having been conveyed to the husband.

5th. That considering the case in the most favorable aspect for the wife, it could only operate to set up a secret trust on the foundation of a special parol contract between her and her husband, in respect to the purchase of the land, which, because not manifested and proved by some writing signed by her husband, is made null and void by the express provision of the Statute of Frauds.

6th. That the deed and order of Court authorizing its execution to the wife, were null and void and without effect as against the subsisting creditors of the husband, although they were valid and effective as against the husband and those claiming under him, subsequent to the date of the deed.

E. P. and wife, on the 21st of June, 1872, made a mortgage of said land to a building association to secure the repayment of a loan to them. HELD:

1st. That it was competent for the mortgagors to make the mortgage—whether it was only of the equitable estate in the husband, or what was claimed to be the legal estate of the wife.

2nd. That the mortgage was a good security as against all except those creditors whose claims may have become liens by judgment or otherwise, prior to the date of the mortgage.

APPEAL from the Circuit Court for Caroline County, in Equity.

The bill in this case was filed by the appellees against the appellants and others, for the purpose of vacating an order of the Circuit Court for Caroline County, and a deed made in pursuance thereof, conveying certain real estate to the appellant, Elizabeth A. Plummer, wife of Edgar Plummer the other appellant.

The bill also sought to vacate a deed of mortgage of said real estate, made to the Workingmen's Permanent Building and Loan Association of Talbot County, by the appellants on the 21st of June, 1872, to secure a loan to them of $2000.00, or else that said mortgage be postponed to the claim of the complainants, which was secured by a judgment against said Edgar Plummer rendered prior both to the deed and to the mortgage.

The Court below (WICKES and STUMP, J.,) passed a decree by which the said order of the Circuit Court for Caroline County was rescinded and annulled, and the deed made pursuant to it was vacated and declared and taken to be null and void, as against the complainants and other creditors of the said Edgar Plummer, and the property conveyed by said deed was ordered to be sold.

From this decree Plummer and his wife appealed. The case is further stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*Philip F. Thomas,* for the appellants.

*John B. Brown* and *E. H. Brown,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

It appears that the real estate of John Thawley, deceased, was, by proceeding on the law side of the Circuit Court for Caroline County, in 1856, sold by Commissioners under the descent laws of the State, and that Edgar Plummer, who had married one of the daughters of the intestate, purchased that part of the real estate known as the "Home Farm," being lot No. 1, for the sum of $5,981.25. Plummer complied with the terms of sale, by making a small cash payment, and giving bond with sureties for the balance of the purchase money. This sale, with others

of other portions of the estate, was reported by the Commissioners, and finally ratified by the Court. The credit payments were made from time to time, covering the period from the expiration of the credit mentioned in the bond to April 25th, 1872. The receipts were all executed to Edgar Plummer as the party paying the money; and it appears that the last money paid on the purchase, being $949 paid on the 25th of April, 1872, was borrowed by Edgar Plummer from Robert Schuyler. There were several heirs of the deceased, and the portion of the aggregate amount of sales of the real estate to which Plummer, in right of his wife, was entitled was about $3,300, as he himself testifies. He has been in the possession and use of the farm ever since the purchase until recently, holding himself out as the owner, and in all respects treating and dealing with it as his own; never declaring or intimating that his wife had any exclusive right or claim to it, until he became embarrassed and insolvent, and then a claim of the wife was set up. No deed was obtained for the land until the 2nd of May, 1872, when it was made to the wife, under the circumstances presently to be mentioned.

Plummer was collector of State and County taxes in Caroline County, for the years 1868, and 1869, and the complainants were his sureties on his bonds; and in September, 1871, he executed a power of attorney authorizing a judgment to be confessed in favor of the complainants for $4,500, to indemnify them against loss. The judgment was entered on the 27th of September, 1871. The complainants were subsequently sued on the bonds, and judgments recovered against them, which they have been required to pay.

On the 11th of April, 1872, and before all the purchase money had been in fact paid, Mrs. Plummer, in her own name, and without the joinder of her husband, filed a petition in the Circuit Court for Caroline County, setting

forth that the deed had not been made for the land purchased by her husband; *that the purchase money had been fully paid,* and that such payment was made with money due her from her father's estate, being her *sole and separate property;* and "that it was understood and agreed between herself and her husband, that the said land should be conveyed to her by the said Commissioners." Whereupon she prayed that the Court would direct Massey the surviving Commissioner, to convey to her the land purchased by her husband, by good and sufficient deed. This petition was sworn to by the husband, although all the purchase money had not in fact been paid, as shown by the receipts produced in evidence. The Court, upon the same day of filing the petition, ordered that the deed should be made to the petitioner, upon the Commissioner being satisfied that the whole purchase money had been paid. The deed was made on the 2nd of May, 1872. The last payment of purchase money was intermediate the date of the order and the date of the deed.

The complainants filed their bill to have the order, and deed made thereunder, set aside as against them and other subsisting creditors of the husband. The husband and wife, in their answer, simply reiterate and rely upon the statement in the petition, and deny that the deed was in fraud of creditors.

The petition and order procured thereon being entirely *ex parte,* of course, they do not in any manner conclude or bind the complainants. Whatever rights they may have had at the time as creditors of Edgar Plummer, remain unaffected by the order, or the deed made in pursuance thereof. *Brooks vs. Brooks, et al.,* 12 *Gill & John.,* 306; *Amer. Ex. Bank vs. Inloes,* 7 *Md.,* 380; *McClellan vs. Kennedy,* 8 *Md.,* 231; *Keighler vs. Ward,* 8 *Md.,* 254; 2 *Taylor's Ev.,* 1440, *sec.* 1495. The question is, could the complainants have successfully resisted the application of the wife, if they had been made parties to her petition. And as to that question we think there can be no doubt.

The money arising from the sale of the wife's inheritance was not her separate estate, as it would be now under the provisions of the Code, but, on the contrary, it was subject to the control of the husband, by virtue of his marital rights; and the husband's rights having attached, the money, as it was received by him, was at his disposal absolutely, and any mere promise that he may have made to his wife, as to its application, was purely voluntary, and without consideration. The statement or suggestion in the wife's petition, that the money derived from the sale of the real estate descended to her became her sole and separate property, was, therefore, without foundation; as prior to the adoption of the Code, in 1860, there was no legislation in existence which affected the husband's marital rights in, or deprived him of control over, the property of the wife, acquired as the money in this case was. *State vs. Krebs*, 6 *H. & J.*, 31; *Peacock vs. Pembroke & Clarke*, 4 *Md.*, 280. The Act of 1853, ch. 245, exempted the property of the wife, acquired in the particular modes designated, from the debts of the husband; but that Act did not operate to divest or affect the marital rights of the husband in the property of the wife. *Schindel vs. Schindel*, 12 *Md.*, 294; *Weems vs. Weems*, 19 *Md.*, 334.

Such being the right of the husband in the money derived from the sale of the real estate descended to the wife, and the farm having been purchased by the husband in his own name, and on his own credit, and the sale having been confirmed to him by the Court, the question is, upon what reason or principle can the claim of the wife now made be maintained as against the creditors of the husband?

It may be conceded that a valid gift by husband to his wife, after marriage, may be made, and that Courts of equity will uphold such gifts as against the husband and those claiming under him; but as against subsisting creditors of the husband, if it be to their prejudice, such gift

is utterly void. This is so upon general principles of equity and justice, and it is so by the statute law of the State.   *Act of* 1853, *ch.* 245 ; *Code, Art.* 45, *sec.* 1.

But here there is an attempt to uphold the transfer of the estate from the husband to the wife, through the agency of the Court, by proving a consideration in the form of a secret parol trust, existing between the husband and wife from the time of the purchase by the husband. This attempt must fail.   It would be, as said by Chancellor JOHNSON, in *Brooks vs. Dent,* 1 *Md. Ch. Dec.,* 527, establishing a precedent of the most pernicious and perilous character, to allow these secret trusts between husband and wife to be set up to defeat the rights of creditors. Where they rest in parol, as in this case, they are in the teeth both of the letter and spirit of the Statute of Frauds, and whenever Courts of justice are invoked to execute them there is always danger of the very consequences that it was the object of the Statute of Frauds to prevent.   The complainants have excepted to all such portions of the evidence as tend to prove such trust, and we think the exception well taken, and must therefore be sustained.

But it is contended by the counsel of the appellants that this case stands upon the footing of a resulting trust, and therefore excepted from the operation of the Statute of Frauds.   The principle of a resulting trust is a very simple one, and if it were clearly shewn that this case presented the facts essential to the establishment of such a trust, the wife might, possibly, be entitled to the benefit of it, even as against the creditors of the husband.   Where one party purchases an estate, and pays the money therefor, but takes the deed in the name of another, a trust results by construction of law to the party who actually paid the money ; and if the nominal purchaser refuses to convey or execute a declaration of trust, the payment of the consideration money may be proved by parol, as before the Statute of Frauds.   The payment of the money is the foundation

of the trust. *Dorsey vs. Clarke*, 4 *H. & J.*, 551; *Botsford vs. Burr*, 2 *John. Ch. Rep.*, 405. But in this case, the legal estate was never conveyed to the husband, and considering the evidence in the most favorable aspect for the wife, it could only operate to set up a secret trust on the foundation of a special parol contract between the husband and wife, in respect to the purchase of the farm. Such trust, however, because not manifested and proved by some writing signed by the husband, is made null and void by the express provision of the Statute of Frauds. But independently of the bar of the Statute of Frauds, the proof falls far short of being sufficient; and without extended comment thereon, we think the case falls within the reason and principle of the cases of *Hollida vs. Shoop*, 4 *Md.*, 465, and *Brooks vs. Dent*, 1 *Md. Ch. Dec.*, 523, and should be decided accordingly. The deed, and order of Court authorizing its execution to Mrs. Plummer, are null and without effect as against the then subsisting creditors of the husband, though they are valid and effective as against the husband and those claiming under him subsequent to the date of the deed.

As to the mortgage of Plummer and wife to the " Working-Men's Permanent Building and Loan Association of Talbot County," that is subject only to the prior liens existing against the property. It was competent for the mortgagors to make the mortgage whether it was only of the equitable estate in the husband, or of what was claimed to be the legal estate in the wife. The mortgage is a good security as against all except those creditors whose claims may have become liens by judgment or otherwise, prior to the date of the mortgage; and in the distribution of the proceeds of sale of the property, the mortgagees will be entitled to that priority.

It follows from what we have said that the decree appealed from must be affirmed.

*Decree affirmed.*

(Decided 15th June, 1876.)