Henrietta J. Sabel, by her husband George Sabel, as next friend *vs.* Fielder C. Slingluff, Guardian, and others.

*Right of Husband to money received from the Sale of his Wife's Real estate—Debt due by Husband to Wife—Statute of Limitations—Equity Pleading.*

Money received by a husband from the sale of his wife's real estate, made before the adoption of the Code, belongs to the husband absolutely, unless *at the time he received it* he promised the wife to repay it, and obtained possession of it upon the faith of such promise.

The receipt of money under such circumstances as would make the husband liable therefor, merely creates a *debt* due by him to his wife, and against such a debt the Statute of Limitations runs, and it will be barred unless sued for or claimed in due time after disability of coverture removed.

A bill to carry out the directions of a will for the sale of real estate, with prayer for general relief, is not a creditors' bill, and the filing of such a bill does not prevent the running of the Statute of Limitations, as against a debt due to the complainant, and recoverable under a creditors' bill.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER and ALVEY, J., for the appellant, and submitted on brief for the appellees.

*Samuel S. Pleasants*, for the appellant.

*Fielder C. Slingluff*, for the appellees.

MILLER, J., delivered the opinion of the Court.

Edward Whittemore died in February, 1872, leaving a widow and five infant children. By a clause in his will he devised all his property, real and personal, to his wife " as long as she shall remain single," and requested that " the property be sold," and " the proceeds invested for the benefit of her and her children;" but " in case she should marry again, then she is only entitled to her third." He appointed his wife his executrix, and she administered the personal estate in the Orphans' Court, and her administration account shows, that after payment of debts, there remained in her hands the sum of $381.73. In August, 1874, the widow in her own right, and as

next friend of her children, filed a bill in equity, praying
a sale of his real estate under the above clause of her
husband's will.   On this bill a decree was regularly
obtained, and sales made by the trustee, and the proceeds
brought into Court.   In June, 1878, she filed a petition
in the equity cause, alleging, that after her marriage to
him, she loaned to her first husband the sum of $2000,
which she had received from a sale of her own property,
and that he promised to re-pay the same, but never did,
and praying that this debt may be paid to her out of the
proceeds of the real estate, his personal estate being
insufficient to pay the same.   This claim being resisted
by the infant children, was rejected by the Court below,
and from the order dismissing her petition this appeal is
taken.   In our opinion the claim was properly rejected.

In the first place, the testimony to support it, the
petitioner herself being the principal witness, is very
meagre and unsatisfactory.   It is admitted that her mar-
riage with Whittemore took place in the spring of 1859,
and that the property from which this $2000 was derived
was sold in August of that year.   Whether this money
was paid by the purchaser of the property to the wife or
to the husband, is left in great uncertainty.   In her
examination-in-chief, she says she kept the money and
loaned it to him in 1862, but on cross-examination she
says the money which came from the sale of the property
was paid to her husband.   Again, she says her husband
promised to re-pay the loan a great many times, and con-
stantly during his life recognized it as a debt due to her,
but whether the promise to re-pay was made before or at
the time he received the money, or whether he obtained
it on the faith of such promise is not stated, and she
admits she never took from him any evidence of the
indebtedness.   In fact the proof is altogether different
from that in *Drury and Wife vs. Briscoe,* 42 *Md.,* 154,
where the claim of the wife was sustained.   The transac-

tion having occurred prior to the adoption of the Code, the case would seem to fall within the decision in *Plummer and Wife vs. Jarman,* 44 *Md.,* 637, where it is said: " The money arising from the sale of the wife's inheritance, was not her separate estate, as it would be now under the provisions of the Code, but on the contrary, it was subject to the control of the husband by virtue of his marital rights; and the husband's rights having attached, the money as it was received by him, was at his disposal absolutely, and any mere promise that he may have made to his wife as to its application was purely voluntary and without consideration."

But assuming we are wrong in this, and that there was a sufficient consideration for the promise made by the husband, the only effect was to create a *debt* due by him to his wife, and that debt was clearly barred by the Statute of Limitations, which we understand from the arguments of counsel on both sides, was relied on by the infant defendants in the Court below, even if the answer of their guardian, reserving all matters of defence, either in fact or in law, were not to be regarded as a sufficient interposition of the plea. We find nothing in the record to prevent the operation of the Statute. The petitioner in her testimony says she mentioned the claim to the Orphans' Court, and they told her the property all belonged to her, and she thought it was not worth while to say anything more about it. The bill which was filed in 1874 was not a creditors' bill, but for a sale of the property, in order to carry out the directions of the will. The insertion of a prayer for general relief in that bill, cannot have the effect to convert it into a creditors' bill for the sale of the realty to pay debts upon an insufficiency of personal assets, so as to prevent the running of the Statute as against a debt due to the complainant and recoverable under such a bill. Unquestionably then the first presentation of this claim as against the proceeds of

the real estate was by the petition filed in 1878, more than five years after her husband's death, and it was therefore clearly barred by the Statute.

*Order affirmed, and*
*cause remanded.*

(Decided 19th June, 1879.)