W. CRANE AND SONS *vs.* PETER BARKDOLL and others.

*Construction of section 1 of Article 45 of the Code—Relation of Debtor and Creditor between Husband and wife—Right of Husband to prefer his Wife in a deed of Trust for the benefit of Creditors—Insufficiency of Suspicious circumstances to impute Perjury to witnesses and to establish Fraud—Privileged communcations as between Attorney and client.*

A wife may become a creditor of her husband, and there is nothing in section one of Article 45 of the Code to prevent the husband from treating his wife like any other creditor, if the relation of debtor and creditor be proved to subsist between them.

A husband may prefer his wife in a deed of trust for the benefit of creditors, or he may convey property to her absolutely in consideration and discharge of such debt, as he could in respect of a debt due by him to any other party.

Although the existence of the debt due by the husband to his wife, and of the notes given therefor, may not have been known to parties dealing with and trusting the husband, and a long period intervened between the origin of the debt and the execution of the deed given to secure it, and the husband made no attempt to secure it otherwise than by his notes, until he had contracted debts, and found himself in failing circumstances, yet these facts, while they are enough to arouse suspicion and subject what the witnesses who state them say, to careful scrutiny, they are not sufficient to justify the Court in imputing perjury to the witnesses, by declaring their testimony to be substantially false, and that the notes were fabricated for the purpose of enabling the husband to cheat and defraud his creditors.

It is a common thing in this country for a party wishing to convey his property, to seek the advice of an attorney, and for the attorney not only to give advice, but to act as conveyancer in the preparation of the deed. Communications made by a client to his attorney thus employed relating to the subject-matter about which and for which advice was thus sought, are just as confidential, and just as much privileged, as if they were made in reference to a litigation existing and in progress at the time.

APPEAL from the Circuit Court for Washington County, in Equity.

The appeal in this case is taken from a decree of the Court below (MOTTER, J.,) dismissing a bill filed by the appellants against the appellees, they being husband, wife and daughter, to set aside a deed made by the husband to the daughter, in trust for the wife, as made in prejudice of the rights of the appellants as creditors of the husband. The case is stated in the opinion of the Court.

The cause was argued before MILLER, YELLOTT, ROBINSON, IRVING, and RITCHIE, J.

*Hy. Kyd Douglas,* for the appellants.

*H. H. Keedy,* for the appellees.

MILLER, J., delivered the opinion of the Court.

The proviso in the first section of Article 45 of the Code, "that no acquisition of property passing to the wife from the husband after coverture, shall be valid, if the same has been made or granted to her in prejudice of the rights of his subsisting creditors," does not prevent the husband from treating his wife like any other creditor, if the relation of debtor and creditor is proved to exist between them. A wife may become a creditor of the husband, and this provision of the Code was never intended to prohibit him from paying or devoting his property to the payment of a *debt* due to her. If she is, in fact, such creditor, the law regards her rights with as much favor as those of other creditors. He may prefer her in a deed of trust for the benefit of creditors, or he may convey property to her absolutely in consideration and discharge of such debt, in the same way he could in reference to a debt due by him to any other party. These propositions have been so frequently announced and settled by the decisions of this

Court that they can no longer be the subject of controversy or doubt. *Bowie vs. Stonestreet,* 6 *Md.,* 418; *Stockett, Adm'r, et al. vs. Holliday,* 9 *Md.,* 480; *Jones, Adm'r of Horsey vs. Jones, et al.,* 18 *Md.,* 464; *Mayfield, et al. vs. Kilgour, et al.,* 31 *Md.,* 240; *Drury and wife vs. Briscoe and Randall, Trustees,* 42 *Md.,* 154; *Oswold, et al. vs. Hoover,* 43 *Md.,* 360; *Sabel vs. Slingluff, et al.,* 52 *Md.,* 132.

The deed assailed by the creditors of the husband in this case bears date the 18th of December, 1875. By it, the husband, Peter Barkdoll, conveyed about ninety acres of land to his daughter, Mary A. Barkdoll, in trust for his wife, Susanna Barkdoll. Upon its face it purports to have been executed, "in consideration of the sum of eleven hundred dollars, heretofore received by him, the said Peter, from his wife Susanna Barkdoll, and in payment and extinguishment of the debt from the said Peter to his said wife thereby created." It was admitted that the value of this land was less than $1100, and in support of the debt referred to as the consideration of the deed, there were produced two promissory notes by the husband to the wife, one for $525, dated the 28th of November, 1868, and the other for $575, dated the 1st of April, 1870, each payable one day after date. The proof as to the history of these notes,—how the wife obtained the money, and how she became the creditor of her husband,—comes from the husband, the wife and the daughter, who were examined as witnesses. By their testimony the following facts, in substance, were proved:

The wife was entitled, under the will of her father, Joseph Shank, who died in November, 1848, to a share of his estate, real and personal, upon the death of her mother, who died in 1850. By an arrangement between them, the son, Benjamin Shank, agreed to take the estate at a valuation and pay to the other children their respective shares in money. Benjamin, in 1854, paid to his

sister, Mrs. Barkdoll, $600 on account of her share, in 1855 he paid her $100 more, and in 1856 he paid her $450, the residue. This money was paid by the brother *directly to his sister*, the wife, and not to her husband. A few days after she received it on each occasion, she loaned it to her husband upon his express promise, *made at the time*, that he would repay the same, and at the time he received them he gave her his notes for the several sums thus received by and loaned to him, which in the aggregate amounted to $1100, and these notes, originally three in number, were subsequently renewed and consolidated in the two which were produced and offered in evidence, the originals having been destroyed when the renewals were made, and these two notes constitute and evidence the debt mentioned in the deed.

Such, in substance, is the state of case made out by these witnesses, and if they are to be believed the deed must stand, for their testimony shows a *bona fide* debt due by the husband to his wife, which is sufficient, upon the principles laid down in the authorities already cited, to support the deed. It is true that while the law has made these parties competent witnesses, they are all more or less interested in sustaining the deed and in the result of this suit, and that interest undoubtedly affects the credibility of their testimony. It is also true that the existence of this debt and of these notes was not known to parties dealing with and trusting the husband, that a long period intervened between the origin of the debt and the execution of the deed, and that the husband made no attempt to secure it otherwise than by his notes, until he had contracted debts, and found himself in failing circumstances. These facts, while they are enough to arouse suspicion and subject what they say to careful scrutiny, are not, in our opinion, sufficient to justify us in imputing perjury to these witnesses by declaring their testimony to be substantially false, and that these notes were fabri-

Crane and Sons *vs.* Barkdoll, *et al.*

-cated for the purpose of enabling the husband to cheat and defraud his creditors. We have examined their testimony carefully, and it appears to us that they have testified with candor and truthfully. There is nothing incredible or improbable in the story they have told. The essential fact that the wife was entitled to a share of her father's estate is established by his will which was offered in evidence. If her brother did not pay her the money as she says he did, it was open to the complainants to put the brother upon the stand as a witness to contradict her. And in reference to the testimony of the daughter, we cannot believe she was telling falsehoods, when she describes how and where she discovered the original notes, and says that she copied them by her father's direction for the purpose of having them renewed, and that he signed the renewals in her presence.

The only other witness examined in the case was Mr. Syester, and there is nothing in his testimony, so far as it went, in material conflict with what these witnesses swore to. He very properly refused to disclose what Barkdoll said to him when he prepared the deed, and the Court was clearly right in sustaining him in this refusal. Barkdoll went to him as a lawyer, employed him to draw the deed, and sought his professional advice in reference to it. It is a common thing in this country, for a party wishing to convey his property to seek the advice of an attorney, and for the attorney not only to give advice, but to act as conveyancer in the preparation of the deed. Communications made by a client to his attorney thus employed, relating to the subject-matter about which and for which advice was thus sought, are just as confidential and just as much privileged as if they were made in reference to a litigation existing and in progress at the time.

*Decree affirmed.*

(Decided 8th March, 1883.)