WILLIAM B. BAYNE and ELIZABETH BAYNE, his Wife *vs.* STATE OF MARYLAND, use of WILLIAM Z. EDELEN, &c. STATE OF MARYLAND, use of WILLIAM Z. EDELEN, &c. *vs.* WILLIAM B. BAYNE and ELIZABETH BAYNE, his Wife.

*Money received by a Married woman Prior to the Code of 1860—Marital rights—Promise without consideration—Deed good as between Husband and Wife, but Void as against Creditors—Equity pleading—Irregularity—Amendment.*

Prior to the Code of 1860, money which came to a married woman from her father or from the sale of slaves given to her by her father, there being nothing to show that the same came to her as her sole and separate estate, vested in her husband immediately upon its receipt by her, by virtue of his marital relation. And any promise by the husband to the wife to repay such money received by him, was without consideration and furnished no ground for a valid claim against him.

B. became a surety on the guardian's bond of M. Having been sued on this bond he conveyed to his wife his entire real estate, being

all the property he possessed. The consideration for the deed was various sums of money alleged to have been loaned by the wife to the husband; these with the interest thereon made up the amount. Shortly after the execution of the deed, judgments were recovered against B. as surety on the guardian's bond. A bill was filed in the name of the State as legal plaintiff for the use of the parties beneficially entitled to the judgments, seeking to have the deed declared void as in fraud of the complainants and the other creditors of the grantor. HELD:

1st. That the deed was perfectly good as between the husband and wife, but void as against the creditors of the husband subsisting at the time of its execution.

2nd. That the bill should not have been filed in the name of the State as legal plaintiff; the State should not have been introduced as a party; but this was an irregularity which could be corrected by amendment upon the remanding of the case.

CROSS-APPEALS from the Circuit Court for Prince George's County.

The bill of complaint in this case was filed in the name of the State of Maryland for the use of William Z. Edelen, and of William Z. Edelen, assignee of Della A. Edelen, against William B. Bayne and Elizabeth Bayne his wife. The object of the suit was to have declared void a deed made by the said William B. Bayne to his wife on the 7th of September, 1868, as in fraud of the complainants and the other creditors of the grantor, subsisting at the time of its execution, and for such other relief as their case might require. The opinion of this Court together with the dissenting opinion furnish a sufficient statement of the facts of the case. The Circuit Court, (BROOKE, J.,) passed a decree vacating the said deed, and directing the property mentioned therein, or so much thereof as might be necessary, to be sold, and the proceeds to be applied, "first to the expenses of this case; secondly, to the payment of the defendant, Elizabeth Bayne, of the sum of six hundred dollars, with interest thereon, from July 1st, 1859, to

September 7th, 1868, and of the sum of twelve hundred dollars, and of three hundred dollars, without interest; thirdly, to the payment of the creditors of the defendant, William B. Bayne, subsisting at the time of the execution of the said deed, according to their respective rights and priorities; and fourthly, the residue, if any, to be paid over to the defendant, Elizabeth Bayne." From this decree both parties appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, and IRVING, J.

*Jos. K. Roberts*, and *William H. Tuck*, for Bayne and wife.

*F. Snowden Hill*, and *Frank. H. Stockett*, for the State, use of Edelen.

ALVEY, C. J., delivered the opinion of the Court.

In this case the deed by the husband to the wife, of all his real estate, was made in September, 1868, for the recited consideration of eight thousand dollars. It was made after suit had been brought by the complainants now seeking to have the deed declared void as against themselves, and but a short time before they recovered judgments against the grantor. The deed is sought to be sustained as against these creditors by proof, by the husband and wife alone, that so far back as the years 1844, 1845, and 1846, and upon several occasions subsequently, the husband had received several sums of money of the wife which he had promised, at the time of receiving the same, to repay to the wife; but not having paid the same, when finding himself pressed by his creditors, and, as he says, importuned by his wife, he summed up the various amounts received from the latter, with interest, which amounted to near about as much as the principal, and made that the consideration of the deed.

Bayne and Wife *vs.* State, use of Edelen.

In the answer of the defendants to the bill, instead of a particular and detailed statement of the transactions between the husband and wife, in regard to the loans of the money made the consideration of the deed, they aver, in general terms, that after their marriage in 1844, and from that time, and at sundry times, down to the time of the execution of the deed, the wife had received from her father, in his life-time, and from his estate after his death, (which occurred in 1858,) various sums of money, which she at different times agreed to loan, and did loan, to her husband, with the promise from him, exacted by her, that he would repay with interest, whenever she might thereafter desire or need the same; and that the husband had repeatedly since promised to secure and repay her the money so loaned.

They further aver, that since the execution of the deed, the husband has been living upon the land conveyed, together with his wife, using and cultivating the same, as her agent, and for her use and benefit, and that the proceeds therefrom have been applied, with the consent of the wife, to the support of herself and family.

As was very justly said by the Supreme Court of the United States, in *Seitz vs. Mitchell*, 94 U. S., 582, and repeated by this Court in the case of *Hinkle vs. Wilson*, 53 *Md.*, 292, " purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property; are so frequently resolted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and

there should be, a presumption against her which she must overcome by affirmative proof. Such has always been the rule of the common law; and the rule continues, though statutes have modified the doctrine that gave to the husband absolutely the personal property of the wife in possession, and the right to reduce into his possession and ownership all her *choses in action."* And in support of the doctrine just stated, many decided cases are referred to by the Court.

In this case, the rights of the parties, and the validity of the transactions involved, depend upon the law as it stood before the adoption of the Code in 1860.

By the common law, before it was modified by the adoption of the Code, as between husband and wife, the personal property of the latter, such as money, goods and chattels, became vested immediately and absolutely in the husband, and he could dispose of it as he pleased. *Co. Litt.,* 351, *b;* 2 *Kent Com.,* 143. And if a debtor of the married woman paid to her during coverture the debt, or if money was given to her by any third person, unless it was expressed to be to her sole and separate use, the money so received enured to the benefit of the husband, and became his property absolutely. And so the husband was entitled absolutely to all sums of money received by a third person on account of his wife during coverture. These principles are among the elementary doctrines of the common law; and they have been adopted and applied by repeated decisions of this Court. *Turton vs. Turton,* 6 *Md.,* 375, 381; *Taggart vs. Boldin & Thayer,* 10 *Md.,* 104.

If, therefore, it be conceded, as it may well be, upon the proof in the case, that the money came to the wife and was received or paid over to the husband, as and in the manner stated in the answer, and as testified to by the wife, still there is nothing to show that it came to the wife as her sole and separate estate, and consequently it

vested in the husband at once and absolutely, by virtue of his marital relation. Unlike a *chose in action* belonging to the wife, which did not vest absolutely in the husband except at his own election to reduce it into possession, the receipt of the money by the wife was the receipt of the same to the use of the husband, and the money became his instantly it was received by the wife. *Carroll vs. Lee*, 3 *G. & J.*, 504.

It would, doubtless, have been competent to the husband to settle the money upon the wife, to her sole and separate use, by gift; but, as has been said by this Court, "the act by which he divests himself of his property must be clear and unequivocal" (*Turton vs. Turton, supra*); or, as was said by the late Chancellor JOHNSON, to establish such gift from the husband to wife, Courts of equity require clear and incontrovertible evidence. *George vs. Spencer*, 2 *Md. Ch. Dec.*, 353, 360. The marital rights of the husband having attached, the mere promises of the husband to the wife to repay her the various sums of money received by him were without consideration, and could form no ground for a valid claim against him. *Oswald vs. Hoover*, 42 *Md.*, 368; *Plummer and Wife vs. Jarman*, 44 *Md.*, 637; *Sabel vs. Slingluff*, 52 *Md.*, 132, 135. Such promises amounted to nothing more than mere voluntary agreements to make future donations to the wife by the return of like sums of money. Being without consideration, they could not be enforced; for a mere promise to make a voluntary gift is not sufficient. To make the intended gift effectual, the intention must have been executed; and the evidence should show clearly and distinctly that the husband had, by positive act, divested himself of his right of property and vested the same in the wife.

This case is entirely unlike those cases where the husband contracts with his wife in respect to her separate estate, or where the fund, in respect to which the promise

is made, is, or could be made, subject to the control of a Court of equity, and the promise is to do what the Court would compel the husband to do, by virtue of the wife's right to equitable settlement out of the fund; or where in consideration of the wife's agreement to sell her real estate, and allow the husband to receive the proceeds thereof, under a promise to invest such proceeds for her benefit, or to pay her the money; as in all such cases, the promise is founded upon good and sufficient consideration, and the relation of debtor and creditor is created as between husband and wife. These propositions find apt and pointed illustration in the cases of *Stevenson vs. Reigart,* 1 *Gill,* 1; *Bowie vs. Stonestreet,* 6 *Md.,* 416; *Stockett vs. Hollyday and Wife,* 9 *Md.,* 480; *Jones vs. Jones and Wife,* 18 *Md.,* 464; *Kuhn vs. Stansfield,* 28 *Md.,* 210; *Mayfield vs. Kilgour,* 31 *Md.,* 242; *Oswald vs. Hoover,* 43 *Md.,* 360; *Crane vs. Barkdoll,* 59 *Md.,* 534.

The case of *Stevenson vs. Reigart,* 1 *Gill,* 1, is much relied upon by the defendants; but that case is not an authority in a case like the present. In that case certain executors held the legacy, a *chose in action,* due the wife, as her trustees, and they paid over such legacy to the husband upon a special agreement with them, that the money should be invested for the exclusive benefit of the wife. It was upon the validity of this agreement with the trustees that the case turned. The Court declared that the husband received the money from the trustees, on the agreement, not by virtue of his marital rights, but as trustee for his wife. He received the money, say the Court, upon a special trust and confidence, that it would be invested for her benefit; he received it as her trustee; and upon his failure to make that investment, the consideration upon which he received it failed, and the wife had a right to consider it as so much money had and received for her use. That case, therefore, has but slight, if any, the remotest, bearing upon this case.

No case could well occur where greater injustice would be done to the creditors of the husband by upholding the deed to the wife, than in this. Bayne, the husband, became surety on the guardian's bond of Monroe, given for the protection of the complainants, then minor children, in 1855. He was then the owner of the farm that he subsequently conveyed to his wife. We may well suppose that it was upon the faith of such ownership of the farm that he was accepted as surety. So soon as he was sued on the bond in 1868, he at once divested himself of his entire property by the deed to the wife, and from his position of owner he descended to and assumed that of agent, but still remaining in the full possession and enjoyment of the farm, while his creditors were left without any possible means from which to get payment of their just demands. This transfer of his property is sought to be supported by proof of mere verbal promises made to the wife, some of the most material of them twenty odd years before the making of the deed.

Mr. and Mrs. Bayne were both examined and re-examined as witnesses, and their several statements are not in all respects consistent as to the circumstances under which the money was obtained by Mr. Bayne. Their respective statements in regard to the making and delivery of the deed, are essentially variant. And though this may be attributed to the imperfection of memory, yet it shows the great necessity for caution, and the danger in proceeding upon such evidence after such great lapse of time. Mrs. Bayne, upon her first examination, in speaking of the deed and the consideration therein expressed, says:

"The money and interest that Mr. Bayne received from her is the amount of the consideration mentioned in the deed, she thinks. She cannot give the dates; the amount was $4,300; that was the principal. The year they were married in, Mr. Bayne got from her $1,000, and then he got $1,500 soon after they were married. She cannot fix

the year, but it was very soon after they were married.
He got six hundred at another time, and twelve hundred
at another time, besides small sums for rent of farm, which
she hardly knows what they amounted to. · The promises
to return the money were made at the times the moneys
were loaned; she required him at those times to return it
to her. She does not know of any other promises than
those already mentioned. Witness and Mr. Bayne were
married in June, 1844, in Prince George's County. Wit-
ness demanded the execution of the deed; the deed was
executed in Marlboro', on the 7th of September, 1868; she
was not present at the execution of the deed; she can't
say when she pressed Mr. Bayne for the deed." She fur-
ther says that she does not remember whether she knew
that her husband had been sued, at the time the deed was
executed, or not; that the deed was never delivered to her.

Mr. Bayne, in his examination, states the circumstances
of the loans, and the making of the deed, thus:

"She loaned witness the money, and when it was loaned
she peremptorily told him that she expected him to return
that money. When he gave her the deed she had all the
dates; the amount she loaned was $4,300, which, with
interest up to that time, amounted to $8,000. The money
was loaned at his house on the 'Apple Grove' farm, at
different times. Mr. Robert W. Hunter, Sr., at one time
gave her a family of negroes; the negroes were sold in
Texas and the money remitted to her; witness got the
draft cashed. The negroes sold for $2,100 or $2,200, but
she got only $1,500 of it, which was a part of the money
loaned to him. He can't state the time, but it was after
1844 or 1845. A short time after their marriage she
loaned him $1,000, which she had gotten from her father.
She had a memorandum of this at the time the deed was
executed, which was destroyed after the execution of the
deed. At another time he got from her $1,200, not long
after the death of Mr. Hunter, in 1858 or 1859, and then
$600; all of which sums came from her father's estate.

The promises to return the moneys were made whenever she loaned him the moneys, and she would occasionally ask him when he was going to pay the moneys." He further states that he took the deed home and delivered it to Mrs. Bayne on the day it was executed. This is manifestly erroneous, according to the testimony of Mrs. Bayne.

Now adopting either of these statements as true, or both of them, the money is not shown to have been the separate estate of the wife, or that such circumstances existed as would have entitled her to a settlement of it; but, on the contrary, that it belonged to the husband by virtue of his marital relation. According to established legal principles, as we have seen, the money became the property of the husband immediately upon its receipt by the wife, as the law stood at the time. His promises to return it to the wife were nothing more than promises to restore money to her possession which the law had vested in him as his own absolute property; and such promises created no legal obligations that could be enforced against the husband. At most only the money coming to the wife after the Act of 1853, ch. 245, could be protected from the debts of the husband.

Upon the whole, this deed, so manifestly in prejudice of the rights of the complaining creditors, ought not to stand as against them. The deed is perfectly good as between the husband and wife, but not as against the subsisting creditors of the husband at the time the deed was made. The decree of the Court below is as favorable to the wife as she could reasonably ask it to be; and but for a technical objection taken to the frame of the bill, we should simply affirm the decree. But the bill is erroneously filed in the name of the State as legal plaintiff, for the use of the parties beneficially entitled to the judgments; thus following the form of the recovery at law upon the bond. This is clearly an irregularity, as the State should not have been introduced as a party; but it is such an irregularity as may be corrected by amendment. We shall

therefore, without affirming or reversing the decree, remand the cause that the amendment, in the particulars mentioned, may be made, and that a decree, similar to the one appealed from, be passed by the Court below.

*Cause remanded*
*under Art. 5, sec. 28, of the Code.*

(Decided 10th April, 1884.)


YELLOTT, J., delivered the following dissenting opinion:

As I am constrained to dissent from the conclusions reached by the majority of the Judges who sat in this cause, I deem it incumbent on me to assign the reasons which render my concurrence in their opinion impossible. In so doing it becomes necessary to enter fully into a consideration of the questions as I find them presented by the record, and elucidated by the able arguments of counsel.

The two appeals, which this record presents, are from a decree of the Circuit Court for Prince George's County; the respondents in the Court below invoking an exercise of the revisory powers of this Court, on the ground of error in said decree, in declaring null and void a deed from the respondent, Wm. B. Bayne, to his wife, Elizabeth Bayne, the other respondent; and the complainant, Edelen, objecting to the allowance to the said Elizabeth Bayne of certain sums of money, to be derived from the prospective sale of the property affected by the operation of the decree, prior to the payment of the debts due to the creditors of the said Wm. B. Bayne, which were subsisting claims against him at the time of the execution of the deed. An inspection of the record does not reveal the existence of any creditors at the present period except the complainant, Edelen; and the validity of the deed is the main and important question involved in controversy. If the transactions between the respondents,

ultimating in the execution of the conveyance, were such as should not receive the sanction of a Court of equity, because of the intent to hinder, delay and defraud the creditors of the grantor, a decree for the sale of the real estate would carry with it the question of distribution; but if no such intent can be discovered or inferred from the facts in evidence, the property should remain *in statu quo ante litem ;* and as there ought to be no decree for a sale, no question in relation to the proper distribution of the proceeds could possibly be presented.

The facts apparent from the record are neither numerous nor involved in the complication and obscurity produced by the adduction of antagonistic and contradictory testimony. With the exception of the complainant, himself, who merely proved that his claim had never been liquidated, the only witnesses produced for the purpose of proving the absence of honest intent in the execution of the deed, were the grantor and the grantee named in the instrument, and who are the respondents in these proceedings. The complainant makes his adversaries in the cause his own witnesses, and relies solely on their testimony for an impeachment of the validity of the conveyance made by the one to the other. The testimony of these witnesses is consistent in relation to the main fact, which is the loan by the wife to the husband, of various sums of money on his express promise of repayment; and any slight discrepancies in regard to minor points, while relating transactions extending through a period of many years, are certainly not suggestive of collusion between the witnesses, and might therefore tend rather to strengthen than to weaken their credibility. In the record there is no proof to contradict them, and as there can be no recognition, as evidence, of any fact, suggestion or suspicion derived from sources *dehors* the record, their testimony is all the proof before the Court in relation to the execution of the deed.

From the testimony thus offered by the complainant it appears that the respondents were married in the year eighteen hundred and forty-four. Subsequently to the marriage, but in the same year, Robert W. Hunter, the father of Mrs. Bayne, loaned to the husband one thousand dollars, exacting of him a promise to pay this sum to his wife, which promise Bayne gave, as a condition on which he received the money, both to Hunter and to his wife. Bayne also gave a memorandum of this loan to his wife, which she retained in her possession until the time of the execution of the deed. Not very long after this transaction Mr. Hunter gave his daughter a family of negroes, who were sold and the money thus obtained, amounting to fifteen hundred dollars, was, in the year eighteen hundred and forty-six, loaned by her to her husband; she, at the time, exacting and receiving from him a promise of repayment. Soon after the death of her father, in the year eighteen hundred and fifty-eight, Mrs. Bayne loaned her husband six hundred dollars, and in eighteen hundred and sixty-eight, about the time of the execution of the deed, she made him two loans, one of twelve hundred and another of three hundred dollars. The whole amount of the money thus loaned by her to him was four thousand six hundred dollars, which with interest added thereto, amounted to eight thousand dollars when the deed was executed; and she made each of these loans on the faith of his promise of repayment. The testimony further shows that there were frequent and earnest importunities on the part of the wife to induce her husband to furnish her with some adequate security, so that she and her children might be protected from the misfortunes which in the vicissitudes of life are always possible, and not unfrequently of actual occurrence.

The evidence in this cause discloses the fact that, on the twenty-first day of August, eighteen hundred and fifty-five, one Townley A. Monroe, as guardian of Wm. Z. Edelen,

and Della A. Edelen, executed a bond to the State of Maryland, with a penalty of two thousand dollars; and that on said bond Robert W. Hunter and the respondent, Wm. B. Bayne were sureties. In the year eighteen hundred and sixty-eight, suits were brought on this bond, in the name of the State, for the use of Wm. Z. Edelen and Della A. Edelen; the declaration in each suit being filed on the twenty-first of December in that year. On the nineteenth day of January, eighteen hundred and sixty-nine, a judgment was rendered in each suit for three hundred and forty-three dollars and twenty-one cents, with interest thereon until paid. At the June Term, eighteen hundred and seventy, in the Circuit Court for Prince George's County, an execution was issued on the judgment in favor of Wm. Z. Edelen, and was returned *nulla bona.* On the fifteenth day of April, eighteen hundred and eighty, the other judgment was assigned by Della A. Edelen to Wm. Z. Edelen, who thus held both judgments when the bill of complaint in this cause was filed on the eighteenth day of June, eighteen hundred and eighty.

Anterior to the institution of the suits on the bond, as is apparent from the dates of the docket entries, Wm. B. Bayne, having no other means of refunding the sums of money loaned as aforesaid, on the seventh day of September, eighteen hundred and sixty-eight, put upon record a deed conveying to his wife his real estate situate in Prince George's County. The estimated value of this property at the time of the execution of the conveyance was between seven and eight thousand dollars; but the proof shows that there has been a subsequent depreciation, and that it is not now worth more than four or five thousand dollars. In her testimony Mrs. Bayne says she was not present at the execution of the deed, and although Bayne, himself, says he delivered it to her, his subsequent statement seems to leave room for the inference that he left

8                         v. 62.

it in the office of the clerk for registration, and afterwards informed her of the fact. On this ground it has been contended in argument that there has been no sufficient delivery, and, therefore, no seisin in the party designated as the grantee; or, in other words, that the instrument was inoperative as a deed of conveyance for want of delivery, and that consequently the seisin still remains in the grantor. It is apparent from both the older and more recent authorities, that no particular mode of delivery is prescribed. In *Sheppard's Touchstone*, 57, it is said:

"And for this it must be known that delivery is either actual; that is, by doing something and saying nothing; or else verbal; that is, by saying something and doing nothing, or it may be by both. And a deed may be delivered by the party himself that doth make it, or by any other by his appointment or authority precedent, or assent or agreement subsequent; for *omnis ratihabitio mandato aequiparatur.*"

In the case of *Barry vs. Hoffman*, 6 *Md.*, 87, the Court said; "The law does not prescribe any mode of delivery. It may be by word or by deed." And in 40 *Md.*, 97, it is decided that, "no particular form of procedure is necessary to effect a delivery; it may be by words or acts, or by both combined; but in all cases the intention that it shall be a delivery must exist."

In an earlier case, where a bill of sale was left with the clerk for record, this seeming to be the only proof of delivery, an attempt was made in argument to demonstrate its insufficiency, but the Court said: "The delivery may be either actual or verbal, and it is sufficient if there be an intention or assent of the mind, on the part of the grantor to treat the deed as his. The instrument in this case was duly acknowledged and recorded, and whether the law requires these formalities or not to make this a valid deed, they are, nevertheless, sufficient to warrant the presumption of a legal delivery by the grantor. The clerk, after

he has recorded a deed, must return the same to the grantee, who is the proper party to receive it, and therefore the possession of the clerk, under such circumstances, will be regarded as the possession of the grantee." *Stewart vs. Redditt,* 3 *Md.,* 79.

The registration of a deed seems to be operatively tantamount to the more ancient and ceremonious mode of transfer by livery of seisin, an open and notorious act intended to indelibly record the fact of investiture on what has been figuratively termed the tablet of the memory. The registration is open to the inspection of the whole world, and thus becomes an adequate substitution for the impressions recorded in the memories of witnesses by livery of seisin, which was formerly the mode of delivery by the feoffor to the feoffee. There can therefore be no doubt that the registration of a deed operates as an actual delivery, if the grantee is subsequently found holding it in his possession and relying upon it as his muniment of title.

The registration of the deed being equivalent to an actual and manual delivery, a title was transferred to the grantee, good and sufficient in legal contemplation, unless impeachable on the ground of fraud. The grantee has acquired a seisin in the land, and an important and valuable right which cannot be taken from her in the absence of proof tending to characterize the transaction as fraudulent in its inception and consummation. When relief is invoked by a bill in equity it can only be granted *secundum allegata et secundum probata.* In other words, the *allegata* and the *probata* must correspond, and the *probata* must have reference to the *allegata.* As observed by Chief Justice MARSHALL, in *Carneal, et al. vs. Banks,* 10 *Wheaton,* 189, "The maxim that a decree must be sustained by the allegations of the parties, as well as by the proof in the cause, is too well established to be disregarded."

The interest of the grantee cannot be affected by the fraudulent intent of the grantor, unless she had knowledge of such intent, and co-operated with him in carrying it into execution. And her cognizance and co-operation must not only be made apparent by averment, but it must be established by proof. This principle is recognized and enunciated in *Green vs. Tanner*, 8 *Met.*, 411, where it is said that "the fact that the grantor was in debt when he made the conveyance, is not sufficient to raise the presumption of fraud; there must be proof that it was made with the intention to defraud creditors, and that the grantee had knowledge of such intention."

And in *Foster vs. Hall*, 12 *Pick.*, 99, Chief Justice Shaw said, " The fact to be proved was that the conveyance was with a fraudulent intent to delay or defeat the creditors of the grantor, by preventing them from securing their debts by attachment, in which case as against such creditors, the conveyance would be inoperative and void. But the law does not put .this construction upon the conveyance, unless there was a fraudulent intent in both parties, nor can the estate of the grantee be defeated, by showing a fraudulent purpose in the grantor, unless it be shown that the grantee participated in it, and by his concurrence promoted it. The proposition to be established then, by the attaching creditor who seeks to vacate a prior conveyance on the ground of fraud is, that the grantor made his conveyance with the intent and for the purpose of defrauding his creditor, by a pretended and colorable sale, or by a sale without consideration, or upon a secret trust contrary to good faith, and that the grantee knew of this intent and purpose, and participated in it. These propositions are in some measure independent of each other, inasmuch as there may be a fraudulent intent on the part of the grantor, but not known to the grantee, though proof of both must concur, to make out a case for the creditor."

This doctrine, so clearly elucidated by the eminent Judge, whose language has just been transcribed, had antecedently received the sanction of the Supreme Court of Massachusetts, in the case of *Bridge vs. Eggleston,* 14 *Mass.,* 249. In that case, Chief Justice PARKER, in delivering the opinion of the Court said, " If fraud is thus proved on him, (the grantor,) then the knowledge of it. on the part of the grantee is to be proved ; which may be done by showing a trifling consideration, or none at all; by acts inconsistent with the *bona fide* ownership of the property, by confessions of the nature of his bargain; or by other circumstances tending to show a knowledge of the designs of the grantor. Without this latter evidence the former, as to the designs of the grantor, is wholly ineffectual to defeat the purchase."

In order to affect the interest of the grantee and annul her title to the estate, on the ground of *fraud,* it is necessary, in conformity with the principle established, that the evidence should disclose her knowledge of his covinous intent. *There is no such averment distinctly made in the bill of complainant,* and the evidence shows that the grantee was ignorant of the existence of any creditors of the grantor at the time of the execution of the deed of conveyance.

Although a fraudulent intent on the part of the grantee has neither been alleged nor proved, yet it is contended that there was no consideration sufficient to support a deed interposed as an obstacle to creditors who are making efforts to obtain satisfaction of their claims from the estate of the debtor. Undoubtedly no debtor can be allowed to make a *gratuitous* transfer of his property, for the purpose of withdrawing it from the claims of his creditors, even though the recipient of his bounty were ignorant of his fraudulent intent. A transfer without consideration would not be valid even against himself, unless made with a view to provide for his wife ; and not even then as against

creditors. In judicial contemplation, the signet of the law is affixed to the property of the debtor, and designates it, even in the hands of an innocent grantee *without consideration,* as a source from which a fund may be derived for the liquidation of his indebtedness.

It is not now, however, a mooted question in Maryland, that there may be a subsisting relation of debtor and creditor between husband and wife, and that a contract for the transfer of property by the former to the latter, for a *bona fide* and valuable consideration, will be enforced in a Court of equity. *Stockett vs. Holliday,* 9 *Md.,* 480; *Jones vs. Jones,* 18 *Md.,* 464.

That a wife may be made a preferred creditor by her husband, is a question which the decisions of this Court no longer leave open for controversy. *Crane and Sons vs. Barkdoll, et al.,* 59 *Md.,* 534. In *Mayfield, et al. vs. Kilgour, et al.,* 31 *Md.,* 244, it is said "that the wife may become a creditor of the husband; and when the relation of debtor and creditor is established between them, her rights will be regarded by the law with as much favor as those of other creditors. Inasmuch, therefore, as the complainants have offered no evidence to assail the verity of the consideration, we are to regard the wife as a creditor of the husband, whom he had a right to prefer; and the deed made by him for her benefit must be sustained."

In the bill of complaint filed in this cause, it is alleged that the deed of conveyance, thus assailed, was founded on "a pretended, or if not on a pretended, then on a past consideration." The only construction applicable to the expression "past consideration" in this averment, is that the conveyance of the property was intended to operate as the extinguishment of a pre-existing debt. This averment is undoubtedly sustained by the proof disclosed by the record; and not only is not controverted by the respondents, but is conceded to be true in their answer. In fact, the substance of this averment forms the sole

basis on which rests their resistance to the claim for relief invoked by the complainant. In the light thrown on this subject by adjudication, in Courts of the highest authority, it cannot now be maintained that an antecedent obligation is not a valid consideration for a subsequent contract. The Supreme Court of the United States said in *Swift vs. Tyson,* 16 *Peters,* 19: " We have no hesitation in saying that a pre-existing debt does constitute a valuable consideration in the sense of the rule, already stated, as applicable to negotiable instruments." And in *Prentice; et al. vs. Zane,* 8 *How. S. C. R.,* 470, it was said that " If the debts were pre-existing ones, as is contended, they would still coustitute a good consideration. However, the decisions in different States on this may differ, and may have changed at different periods, this Court seems deliberately to have held this doctrine in *Swift vs. Tyson.*"

This question has also been determined by recent adjudication in Maryland. In the case of *Busey vs. Reese,* 38 *Md.,* 270, Chief Judge BARTOL, in delivering the opinion of the Court, after referring to *Swift vs. Tyson,* said " To entitle the deed first recorded to be preferred, nothing more is required than that it shall be made *bona fide,* and upon a good and valuable consideration. If taken in payment and satisfaction of a pre-existing debt, it is for a good and valuable consideration within the meaning of the Code."

It has not been contended in the argument of this cause, that the sums loaned by the wife to her husband, at a period subsequent to the death of her father, in the year eighteen hundred and fifty-eight, did not constitute an indebtedness on his part which he was under a legal obligation to pay to her as his creditor. But it has been urged in argument, that the sums which he obtained from her anterior to the introduction into this State of legislation, having for its object the protection of the

wife's property, and its exclusion from the claims of the
husband and his creditors, legally appertained to him by
the rule of the common law, establishing his marital
rights, and that any promise of repayment on his part
was devoid of obligation, and could not be enforced. In
other words, having obtained these sums, amounting in
the aggregate to two thousand five hundred dollars, on
the assurance and express promise of re-imbursement, he
was in no manner bound by the contract, and that, there-
fore, these loans are not to be regarded as constituting a
pre-existing debt. This question is important, and invokes
a careful consideration. Undoubtedly, if the husband, at
the period designated, had obtained possession of money,
belonging to the wife, by the exercise of his marital
rights, no legal obligation of repayment would have been
incurred. But the evidence in this cause discloses a totally
different category of facts. He did not obtain possession
of the money in the hands of his wife in the manner indi-
cated by complainant's solicitor. He seems to have de-
clined to exercise his marital prerogative, and, as the
proof shows, did not obtain possession, until a promise
had been exacted by her, and given by him, that she
should be re-imbursed. There was a moral obligation on
his part, to refund the money obtained under these circum-
stances; and when he received the sums from her father
and herself, on the condition of repayment, making an
express agreement to repay, and giving her a written
memorandum to do so, which she retained until the stipu-
lation was complied with by the execution of the deed of
conveyance, there can be no difficulty in recognizing the
validity of the consideration. His ratification of the moral
obligation, by an express promise, converts it into a legal
contract susceptible of enforcement by judicial sanction.
This doctrine was long since settled in the Court of
King's Bench, in the case of *Hawkes vs. Saunders, Cowper's
Rep.*, 290. In that case, Lord MANSFIELD said, "The rule

laid down at the bar, as to what is or is not a good consideration in law, goes upon a very narrow ground indeed; namely, that to make a consideration to support an *assumpsit,* there must be either an immediate benefit to the party promising, or a loss to the person to whom the promise was made. I cannot agree to that being the only ground of consideration sufficient to raise an *assumpsit.* Where a man is under a moral obligation, which no Court of law or equity can enforce, and promises, the honesty and rectitude of the thing is a consideration. As if a man promise to pay a just debt, the recovery of which is barred by the Statute of Limitations; or if a man, after he comes of age, promise to pay a meritorious debt contracted during his minority, but not for necessaries; or if a bankrupt, in affluent circumstances after his certificate, promise to pay the whole of his debts; or if a man promise to perform a secret trust, or a trust void for want of writing by the Statute of Frauds. In such, and many other instances, though the promise gives a compulsory remedy, where there was none before either in law or equity; yet as the promise is only to do what an honest man ought to do, the ties of conscience upon an upright man are a sufficient consideration."

The other Justices concurred, and BULLER added: "I shall give my opinion singly on this point: Whether an obligation in justice, equity and conscience, to pay a sum of money, be, or be not, a sufficient consideration in point of law, to support a promise to pay that sum? If such a question were stripped of all authorities, it would be resolved by inquiring whether law were a rule of justice, or whether it were something that acts in direct contradiction to justice, conscience and equity. But the matter has been repeatedly decided. I agree with my lord, that the rule laid down at the bar, as to what is or is not a good consideration, is much too narrow. The true rule is, that wherever a defendant is under a moral obligation, or is

liable in conscience and equity to pay, that is a sufficient consideration."

The principle enunciated by the Court of King's Bench was recognized and enforced to its fullest extent in the case of *State, use of Stevenson vs. Reigart,* 1 *Gill,* 26, which was an action at law. Certain legacies had been left to the wife and were in the hands of the executors. These sums were demanded by the husband and paid to him on the faith of his promise to invest them for her benefit. This he neglected to do, and after his decease, an action was instituted to recover the amount thus obtained by the husband from his administrator. In that case, the Court was asked to instruct the jury that no agreement made by the husband with the wife, or with any person for her, with respect to money that belonged to her in her own right, before and at the time of said marriage, upon which the marital rights of the husband attached by said marriage, was binding upon the husband, and that if the promise was made by the husband in ignorance of his marital rights it was devoid of legal obligation and could not be enforced.

The Court of original jurisdiction refused to grant these instructions, and the Court of Appeals affirmed its ruling. After referring to the case of *Hawkes vs. Saunders,* and citing other authorities the Court said : " These last cases, it is true, were cases in equity, and there were no creditors to contend with, but they show that, as between husband and wife, the relation of debtor and creditor may exist." Referring then to the alleged ignorance of his marital rights on the part of the husband it was further remarked that, " The agreement having been entered into by the husband with a full knowledge of all the facts, without fraud or surprise, and being founded on a valid consideration, cannot be otherwise than obligatory. We do not think that the husband can shelter himself under a mistake of law ; he not only appears to have taken legal ad-

vice upon the subject of his marital rights in relation to the legacy, but if he had not, there is, we think, nothing in this case to except it out of the general rule, that ignorance of the law cannot be made available with a full knowledge of all the facts."

The authority of *State, use of Stevenson vs. Reigart* is referred to with approval in *Drury & Wife vs. Briscoe and Randall*, 42 *Md.*, 162.

The authorities, which might be referred to, in support of the principles applicable to the case presented by this record, are numerous, but a very recent decision of this Court in the case of *Crane and Sons vs. Barkdoll, et al.*, 59 *Md.*, 534, has rendered a multiplication of citations wholly unnecessary. It is only necessary to refer to the exposition of principles presented by the Judge to whom the duty of preparing the opinion was assigned. He says:

" A wife may become a creditor of the husband, and this provision of the Code (*Art.* 45, *sec.* 1,) was never intended to prohibit him from paying, or devoting his property to the payment of, a *debt* due to her. If she is, in fact, such creditor, the law regards her rights with as much favor as those of other creditors. He may prefer her in a deed of trust for the benefit of creditors, or he may convey property to her absolutely in consideration and discharge of such debt, in the same way he could in reference to a debt due by him to any other party. These propositions have been so frequently announced and settled by the decisions of this Court that they can no longer be the subject of controversy or doubt."

After the citation of a number of authorities, a statement of the facts of the case is presented in a very lucid arrangement. Three several sums of money, derived from her father's estate, were paid to the wife in the years 1854, 1855, and 1856. These sums, as received, were loaned by the wife to the husband upon his express promise made at the time, that he would repay the same,

and he gave her his notes for the amount borrowed, which notes were afterwards renewed. The husband becoming involved in debt, executed a deed of trust in favor of his wife, making her a preferred creditor. His other creditors assailed this deed in the Circuit Court; but that Court recognized the validity of the conveyance, and its decree was affirmed by this Court.

Perhaps no two cases are to be found precisely similar in all respects; but in the case now under consideration and in that reported in 59 *Md.* the distinctive marks of dissimilarity are so slight as to be barely perceptible. In the latter case there were three loans in three successive years, commencing in 1854 and ending in 1856. In the former there were five or six loans, commencing in 1844 and ending in 1868; the year in which the deed was executed. In each case the wife loaned the money to her husband on his express promise to repay. Barkdoll gave his wife promissory notes, and Bayne memoranda in writing. In each case the husband repaid his wife by making her a preferred creditor, and by a conveyance of his real estate. Neither Bayne nor his wife were voluntary witnesses. They were compelled to testify by their adversary in the cause, who thus sought to impeach the validity of the deed. Their testimony proved that the deed was given in payment of a pre-existing debt due from the husband to the wife. In the record there is no proof to contradict them; and as there can be no recognition as evidence of any lact or suggestion *dehors* the record, their testimony in support of the deed is all the proof before this Court. In the other case the parties interested in maintaining the deed were voluntary witnesses in support of its validity. The Judge who delivered the opinion of the Court in that case, said:

"It is true that while the law has made these parties competent witnesses, they are all more or less interested in sustaining the deed, and in the result of this suit, and

that interest undoubtedly affects the credibility of their testimony. It is also true that the existence of this debt and of these notes was not known to parties dealing with and trusting the husband, that a long period intervened between the origin of the debt and the creation of the deed, and that the husband made no attempt to secure it, otherwise than by his notes, until he had contracted debts, and found himself in failing circumstances. These facts, while they are enough to arouse suspicion, and subject what they say to careful scrutiny, are not, in our opinion, sufficient to justify us in imputing perjury to these witnesses, by declaring their testimony to be substantially false, and that these notes were fabricated for the purpose of enabling the husband to cheat and defraud his creditors."

I am constrained to believe that the questions presented by this record have already been settled by adjudication, and that the sums borrowed by Bayne from his wife on an express promise to repay, constituted a debt which he was under a legal obligation to liquidate, and that this antecedent indebtedness was a valid consideration for the deed of conveyance which was subsequently executed, and which the complainant now seeks to annul on the ground that it originated in a covinous design to hinder and delay the creditors of the grantor.

This deed was executed and put upon record more than fifteen years ago, and was open to the inspection of the whole world during a period of twelve years before an attempt was made to impeach its validity by the institution of these proceedings. The Supreme Court of the United States in the case of *Hayward vs. National Bank*, 6 *Otto*, 617, has said that—

"Courts of equity often treat a lapse of time, less than that prescribed by the Statute of Limitations, as a presumptive bar, on the ground of ' discouraging stale claims, or gross laches, or unexplained acquiescence in the asser-

tion of an adverse right.' Adopting the language of Lord CAMDEN, in *Smith vs. Clay, Amb.*, 645, the Court proceeds to say: 'A Court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, when the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this Court into activity but conscience, good faith, and reasonable diligence. When these are wanting, the Court is passive and does nothing. Laches and neglect are always discountenanced.' These doctrines have received the approval of this Court in numerous cases."

During the lapse of the many years, while the creditor, fully cognizant of the existence of this deed, remained inactive, the property which at first was hardly adequate to the repayment of the sums loaned, with the interest included, has so depreciated in value, that the proof indicates a doubt that a sum equal to the principal could, at the present period, be obtained by its sale at auction. That the grantee named in the deed was a creditor of the grantor is apparent from the proof; and that the husband had a legal right to make his wife a preferred creditor is a question removed from the scope of controversy by the authorities cited. I think, therefore, that the decree of the Circuit Court should be reversed, as that Court was clearly in error in undertaking to disturb and extinguish the vested rights of the wife, by a decree authorizing and directing a sale of the property, on the assumption that the conveyance made for the purpose of liquidating a pre-existing debt, was executed with a fraudulent intent to hinder and delay creditors in the collection of their claims.